JUSTICE SOLOMON delivered the opinion of the Court.
*788 **338 This appeal arises from the tragic deaths of Timothy O'Donnell and his five-year-old daughter, B.O.,[1] following a fatal multi-vehicle accident on the New Jersey Turnpike. Timothy's widow and B.O.'s mother, Pamela O'Donnell (O'Donnell), sought to hold the New Jersey Turnpike Authority (NJTA) liable for the wrongful death of her husband and daughter pursuant to the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to 59:12-3. O'Donnell's attorney prepared a notice of tort claim describing the fatal accident and naming the NJTA as the responsible entity. Within ninety days of the accident, O'Donnell's attorney served her notice **339 of claim on the State, rather than the NJTA. However, another driver involved in the accident properly served the NJTA within the ninety-day window. This notice of claim served upon the NJTA cited the exact circumstances surrounding the collisions, named the involved parties, and alleged the same theory of liability against the NJTA. After the ninety-day window had closed but within one year of the accident, O'Donnell sought leave to file an amended notice of claim with the NJTA, arguing that she should be permitted to file her notice of claim late pursuant to N.J.S.A. 59:8-9 because extraordinary circumstances existed.
We are asked to determine whether extraordinary circumstances exist under N.J.S.A. 59:8-9 to permit the untimely filing of a notice of claim when: (1) the claimant pursues her claims against a public entity in good faith within ninety days of the accident and identifies the proper entity in her notice of claim, but serves the wrong public entity; (2) a separate claimant serves a timely notice of claim on the correct public entity pursuant to N.J.S.A. 59:8-8, citing the exact circumstances, parties, and theories of liability in his or her notice; and (3) the claimant then invokes N.J.S.A. 59:8-9's procedure for obtaining judicial approval of an untimely notice of claim within one year of the accident giving rise to the tort claim. We conclude that, under the limited circumstances of this case, extraordinary circumstances existed justifying O'Donnell's late filing. We therefore reverse the judgment of the Appellate Division.
I.
On a February afternoon, Timothy O'Donnell was driving westbound on the Turnpike with his five-year-old daughter B.O. in the rear passenger seat. As the pair travelled toward their Bayonne home and approached a tollbooth at Interchange 14C, Timothy's vehicle was violently rear-ended by a vehicle travelling erratically and at a high rate of speed. The impact propelled Timothy's vehicle onto the opposite side of the Turnpike and into oncoming traffic, where it was struck head on by *789 an ambulance driven by **340 Eliasar Morales.[2] Both Timothy and B.O. died as a result of the accident.
Timothy's widow and B.O.'s mother, O'Donnell, hired counsel to sue the other drivers involved in the accident and the NJTA. On May 17, 2016, within ninety days of the accident, O'Donnell's attorney served a notice of claim under N.J.S.A. 59:8-8 on the Bureau of Risk Management of the State of New Jersey. However, the attorney did not serve a notice of claim on the NJTA as is required by the Tort Claims Act. The filed notice of claim described the fatal accident and indicated that it occurred on the afternoon of February 22, 2016 on the Turnpike near the 14C Interchange. In the notice, O'Donnell named the NJTA as the responsible state agency and listed its address. O'Donnell alleged that the NJTA's negligence caused the deaths of Timothy and B.O. Specifically, the notice stated that Timothy's vehicle would not have propelled to the opposite side of the Turnpike had the NJTA installed safety barriers to separate opposing lanes of traffic.
O'Donnell retained new counsel, who served an amended notice of claim on the NJTA one hundred and ninety-seven days after the accident. Two days later, O'Donnell brought suit individually, on behalf of the estates of Timothy and B.O., and as guardian of her minor daughter who was not involved in the accident. She asserted claims against the NJTA and others under the Wrongful Death Act, N.J.S.A. 2A:31-1 to -6, the Survival Act, id. § 15-3, and Green v. Bittner, 85 N.J. 1, 15-20, 424 A.2d 210 (1980) (extending scope of recovery in actions for the wrongful death of a child to loss of companionship, subject to stated limitations).[3]
**341 The NJTA filed a Rule 4:6-1 motion to dismiss the complaint, contending that O'Donnell failed to serve the notice of claim within ninety days of the accident pursuant to N.J.S.A. 59:8-8.[4] The NJTA argued that under N.J.S.A. 59:8-7, O'Donnell's initial notice of claim had to be served timely on the NJTA, rather than the State. O'Donnell opposed the NJTA's motion and filed a cross-motion for leave to file a late notice of claim under N.J.S.A. 59:8-9, which permits a claimant to apply to the court for permission to file a late notice of claim if the public entity will not suffer substantial prejudice and extraordinary circumstances justify the untimely filing.
The trial court denied the NJTA's motion to dismiss and granted O'Donnell's cross-motion. It found that O'Donnell failed to serve timely a notice of claim on the NJTA and that service on the State did not constitute service on the NJTA under the Tort Claims Act. Nevertheless, the trial court found that O'Donnell had demonstrated the existence of extraordinary circumstances and allowed her to file a late notice of claim. The judge found it extraordinary that the State, having received a notice of claim involving a double-fatality car crash, failed to forward the notice of claim to the NJTA or otherwise notify O'Donnell that the notice had been served on the wrong public entity. The judge also determined that, given the surrounding circumstances, it would be inappropriate *790 to penalize O'Donnell for her attorney's negligence.
On appeal, the NJTA argued that the trial court abused its discretion in finding extraordinary circumstances to permit the filing of a late notice of claim. According to the NJTA, the trial court's extraordinary circumstances finding was contrary to binding precedent, which "establish[es] that neither attorney mistake nor a public entity's failure to alert plaintiffs to their mistakes will support a finding of extraordinary circumstances." The NJTA relied primarily on D.D. v. University of Medicine & Dentistry of New Jersey, 213 N.J. 130, 157-58, 61 A.3d 906 (2013), for the **342 proposition that an attorney's "inattention or even malpractice" does not constitute an extraordinary circumstance sufficient to excuse noncompliance with the ninety-day filing deadline under the Tort Claims Act.
In response, O'Donnell argued that the trial court considered the totality of the unique facts presented in this case and properly determined that extraordinary circumstances existed to permit the untimely filing. According to O'Donnell, the trial court's consideration of the unique combination of circumstances presented was consistent with the Tort Claims Act's legislative framework, preserved its essential purposes, and advanced the interests of justice.
The Appellate Division reversed. The panel held that the trial court mistakenly exercised its discretion in finding the existence of extraordinary circumstances. Applying the standard set forth by this Court in D.D., the panel concluded that there were "no obstacles" preventing O'Donnell's first attorney from identifying the NJTA as the proper entity to be served, and that her second attorney's prompt remedial action and service of an amended notice on the NJTA was insufficient to constitute extraordinary circumstances. Addressing the trial court's other conclusions, the panel held that the NJTA did nothing to impede timely service and that the State had no obligation to forward the wrongly filed notice to the NJTA.
O'Donnell filed a petition for certification, which we granted. 235 N.J. 407, 195 A.3d 1290 (2018). We also granted O'Donnell's motion to expand the record. The expanded record included Morales's notice of claim, which he timely served on the NJTA. According to the notice, Morales sustained multiple injuries as a result of the collision. The notice indicates that on the afternoon of February 22, 2016, Morales was involved in a fatal three-vehicle collision on the Turnpike near Interchange 14C. It contains Morales's allegation that the NJTA failed to install roadway safety barriers preventing vehicles from crossing onto the opposite side of the Turnpike and into oncoming lanes of traffic. Morales also **343 attached the corresponding police report to describe the incident and its surrounding area.
We granted amicus curiae status to the New Jersey Attorney General and the New Jersey Association for Justice (NJAJ).
II.
The parties' arguments here mirror those raised in the Appellate Division. In addition, O'Donnell urges this Court not to read D.D. as having established an inflexible, bright-line rule preventing the application of the extraordinary circumstances exception based on an attorney's mistake. According to O'Donnell, a reasonable mistake by an attorney can, when considered in connection with the totality of the circumstances, support a finding of extraordinary circumstances. O'Donnell also urges this Court to consider her improperly served notice of claim in conjunction with *791 Morales's timely notice of claim served upon the NJTA, arguing that Morales's timely notice of claim supports a finding of extraordinary circumstances.
The NJAJ agrees with O'Donnell's arguments and also highlights the Appellate Division's failure to address the lack of any appreciable prejudice to the NJTA. According to the NJAJ, the NJTA was aware of the motor vehicle accident and thus could have investigated the incident and prepared a defense without a notice of claim. The NJAJ argues further that the significant facts uncovered after the panel rendered its decision -- namely, Morales's timely and properly served notice of claim -- confirm that the NJTA sustained no prejudice from O'Donnell's late notice.
According to the NJTA, this case involves nothing more than an attorney's simple mistake and fits squarely within the majority's holding in D.D. The NJTA also urges this Court to reject O'Donnell's argument that Morales's notice of claim affects the extraordinary circumstances analysis. It argues that no legal authority stands for the proposition that a claimant can establish extraordinary circumstances by relying on a separate claimant's notice of claim.
**344 The Attorney General echoes the NJTA's arguments and adds that the State was not obligated to forward the improperly served notice of claim to the NJTA. Imposing such a burden on the State, according to the Attorney General, would create uncertainty for litigants and the courts, improperly shift a claimant's burden to serve the proper entity onto the State, and administratively burden the State and other public entities.
III.
A.
Pursuant to the express terms of the Tort Claims Act, we review a trial court's application of the extraordinary circumstances exception for abuse of discretion. D.D., 213 N.J. at 147, 61 A.3d 906 ; accord N.J.S.A. 59:8-9 (assigning the determination as to whether late notice may be filed to "the discretion of a judge of the Superior Court"). "Although deference will ordinarily be given" to a trial court's factual findings, "the court's conclusions will be overturned if they were reached under a misconception of the law." D.D., 213 N.J. at 147, 61 A.3d 906. "Generally, we examine more carefully cases in which permission to file a late claim has been denied than those in which it has been granted, to the end that wherever possible cases may be heard on their merits...." Lowe v. Zarghami, 158 N.J. 606, 629, 731 A.2d 14 (1999) (quoting Feinberg v. DEP, 137 N.J. 126, 134, 644 A.2d 593 (1994) ). Therefore, "any doubts" as to whether extraordinary circumstances exist "should be resolved in favor of the application." Ibid. (quoting Feinberg, 137 N.J. at 134, 644 A.2d 593 ).
B.
We begin our discussion with a brief analysis of the Tort Claims Act and its extraordinary circumstances exception. "The Tort Claims Act modifies the doctrine of sovereign immunity" and sets forth the parameters within which an aggrieved party may recover for the tortious acts of public entities.
**345 Feinberg, 137 N.J. at 133, 644 A.2d 593. The Act's "guiding principle" is "that immunity from tort liability is the general rule and liability is the exception." D.D., 213 N.J. at 134, 61 A.3d 906 (internal quotation marks omitted) (quoting Coyne v. DOT, 182 N.J. 481, 488, 867 A.2d 1159 (2005) ). Consequently, the Act "imposes strict requirements upon litigants seeking to file claims against public entities." McDade v. Siazon, 208 N.J. 463, 468, 32 A.3d 1122 (2011).
*792 Under N.J.S.A. 59:8-8, a claimant must file a notice of claim with the public entity "not later than the ninetieth day after accrual of the cause of action." N.J.S.A. 59:8-4 sets forth six categories of information that the notice of claim must contain. The notice of claim, further, must "be filed directly with the specific local entity at issue." McDade, 208 N.J. at 476, 32 A.3d 1122 (citing N.J.S.A. 59:8-7). A party may not file suit until six months after the notice of claim is received by the public entity. N.J.S.A. 59:8-8.
Those statutory requirements are intended to achieve the following legislative goals:
(1) to allow the public entity at least six months for administrative review with the opportunity to settle meritorious claims prior to the bringing of suit;
(2) to provide the public entity with prompt notification of a claim in order to adequately investigate the facts and prepare a defense;
(3) to afford the public entity a chance to correct the conditions or practices which gave rise to the claim; and
(4) to inform the State in advance as to the indebtedness or liability that it may be expected to meet.
[ McDade, 208 N.J. at 475-76, 32 A.3d 1122 (internal quotation marks omitted) (quoting Beauchamp v. Amedio, 164 N.J. 111, 121-22, 751 A.2d 1047 (2000) ).]
Accordingly, when enacting the notice of claim provision of the Tort Claims Act, "the Legislature sought to afford to public entities an 'opportunity to plan for potential liability and correct the underlying condition.' " Jones v. Morey's Pier, Inc., 230 N.J. 142, 155, 165 A.3d 769 (2017) (quoting McDade, 208 N.J. at 476, 32 A.3d 1122 ).
Recognizing the "harshness" of N.J.S.A. 59:8-8's ninety-day deadline, **346 Rogers v. Cape May Cty. Office of Pub. Def., 208 N.J. 414, 420, 31 A.3d 934 (2011), the Legislature created a mechanism through which a claimant could obtain judicial approval to file a late notice of claim under certain circumstances:
A claimant who fails to file notice of his claim within 90 days as provided in section 59:8-8 of this act, may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for his failure to file notice of claim within the period of time prescribed by section 59:8-8 of this act or to file a motion seeking leave to file a late notice of claim within a reasonable time thereafter; provided that in no event may any suit against a public entity or a public employee arising under this act be filed later than two years from the time of the accrual of the claim.
[ N.J.S.A. 59:8-9 (emphases added).]
Therefore, N.J.S.A. 59:8-9 permits a claimant to file an application for leave to serve a late notice of claim on a showing of extraordinary circumstances, so long as the application is filed within one year of the accrual of the claim and the public entity has not been substantially prejudiced by the delay.
Prior to N.J.S.A. 59:8-9's enactment, a claimant needed only to show that "sufficient reasons" -- rather than extraordinary circumstances -- prevented the filing of a timely notice of claim. Lowe, 158 N.J. at 625, 731 A.2d 14. This change of language *793 signaled the enactment of a "more demanding standard," id. at 625-26, 731 A.2d 14, and "raise[d] the bar for the filing of a late notice" of claim. Rogers, 208 N.J. at 428, 31 A.3d 934. However, the Legislature left both "sufficient reasons" and "extraordinary circumstances" undefined. See Lamb v. Global Landfill Reclaiming, 111 N.J. 134, 147, 543 A.2d 443 (1988) ; see also Lowe, 158 N.J. at 626, 731 A.2d 14. Under the less demanding "sufficient reasons" standard, "trial courts consider[ed] combinations of factors when exercising their discretionary authority to grant extensions of time." Lamb, 111 N.J. at 149, 543 A.2d 443. The "sufficient reasons" standard was "not a static requirement," ibid., with "[n]ot any one factor" conclusively permitting or prohibiting an untimely filing. Lowe, 158 N.J. at 629, 731 A.2d 14. This Court has likewise analyzed the **347 imprecise "extraordinary circumstances" standard "on a case-by-case basis," Rogers, 208 N.J. at 428, 31 A.3d 934, with the outcome of each case depending "on the facts presented." Ventola v. N.J. Veteran's Mem'l Home, 164 N.J. 74, 77, 751 A.2d 559 (2000) (internal citations omitted); see Lowe, 158 N.J. at 631, 731 A.2d 14 ("Because of the specific facts of this case, ... this plaintiff presented extraordinary circumstances, under which late notice of a claim is permitted."); Eagan v. Boyarsky, 158 N.J. 632, 640, 731 A.2d 28 (1999) ("[W]e now consider whether under the unique facts of this case, plaintiff may file a late notice of claim.").
C.
In a limited number of previous decisions, this Court has analyzed the Tort Claims Act's extraordinary circumstances exception. In Lowe, Ventola, and Beauchamp, we found that extraordinary circumstances existed and permitted the claimants to file an untimely notice of claim under N.J.S.A. 59:8-9. In D.D., however, we reached the opposite conclusion.
We begin with Lowe, where a patient brought a medical malpractice action against a physician who left a metallic clip in her body during surgery. 158 N.J. at 611, 613, 731 A.2d 14. The physician was employed by the University of Medicine and Dentistry of New Jersey (UMDNJ), a public entity, but the surgery was performed at an affiliated private hospital. Id. at 611-12, 731 A.2d 14. Unaware of the physician's public employment status, the patient failed to file a timely notice of claim as required by the Tort Claims Act. Id. at 613, 731 A.2d 14. However, we applied the extraordinary circumstances exception because the patient's failure to file a timely notice arose "not from any lack of diligence," but rather because the physician's "status as a public employee was obscured by his apparent status as a private physician." Id. at 629, 731 A.2d 14. In reaching that conclusion, we explained that a late notice would prejudice neither the physician nor UMDNJ. Id. at 631, 731 A.2d 14. Because the physician was required to keep medical records in the ordinary course of treating patients, no **348 investigation was hindered by the untimely filing. Ibid. We further explained that, given the discovery of a metallic object in the patient's body, the physician "must have been aware of the possibility of a malpractice suit." Ibid.
We applied the principles announced in Lowe when confronted with an analogous situation in Ventola. In that case, a resident of the New Jersey Veterans Memorial Home (VMH) and his wife sought to sue VMH for failing to adequately monitor the resident's health. 164 N.J. at 78, 751 A.2d 559. However, the plaintiffs informed their attorney that the federal government, rather than the State, ran the VMH, and the attorney filed an administrative claim *794 form with the United States Department of Veterans Affairs pursuant to the Federal Tort Claims Act. Ibid. Recognizing that the United States Department of Veterans' Affairs is "the dominant agency in providing veterans' benefits," we applied the extraordinary circumstances exception and allowed the plaintiffs to file an untimely notice of claim in light of "their understandable confusion concerning the status of the veterans' home." Id. at 82, 751 A.2d 559. In finding the existence of extraordinary circumstances, we concluded that "in every respect other than their appreciation of the role of the New Jersey Department of Military and Veterans' Affairs, the [plaintiffs] were diligent in prosecution of their claims." Ibid. Echoing our decision in Lowe, we concluded that the VMH was not prejudiced in its defense of the case because the circumstances surrounding the incident were fully documented in the resident's medical records. Ibid.
In Beauchamp, the plaintiff suffered physical injuries after her vehicle was rear-ended by a New Jersey Transit bus. 164 N.J. at 114, 751 A.2d 1047. She contacted an attorney who, relying on a published Appellate Division opinion,[5] advised the plaintiff that her tort claim was premature because "her injuries did not appear serious enough" to recover non-economic damages under **349 N.J.S.A. 59:9-2(d). Ibid. Recognizing that the attorney's confusion was derived in part from a previous decision of the Appellate Division, we applied the extraordinary circumstances exception and allowed the plaintiff to file an untimely notice of claim. Id. at 122-23, 751 A.2d 1047. In reaching our conclusion, we found that the plaintiff "did everything she could to protect a potential claim" because she immediately sought medical attention and legal advice following the accident. Id. at 122, 751 A.2d 1047.
Finally, in D.D., we determined that attorney malpractice, in and of itself, could not satisfy the extraordinary circumstances threshold. 213 N.J. at 157, 61 A.3d 906. There, the plaintiff sought to sue UMDNJ for publicizing her private and confidential health information. Id. at 135-36, 61 A.3d 906. She failed to file a timely notice of claim but argued that her medical condition -- which she suffered as a result of UMDNJ's dissemination of her personal information -- and her attorney's shortcomings together constituted extraordinary circumstances under the Tort Claims Act. Id. at 149, 61 A.3d 906. We first concluded that her medical proofs were insufficient to overcome the statutory bar, as she presented no evidence indicating that her medical condition significantly interfered with her ability to timely pursue her cause of action. Id. at 151-52, 61 A.3d 906. We also held that the plaintiff could not satisfy her burden to show extraordinary circumstances "by coupling an attorney's inattentiveness with otherwise inadequate medical proofs," id. at 157, 61 A.3d 906, and explained that reaching the opposite conclusion "would create a mechanism by which any plaintiff, merely by pointing to a lawyer's failings, could bypass the statutory test for timeliness." Id. at 158, 61 A.3d 906 (emphasis added).
IV.
We now analyze the totality of unique facts and circumstances presented here, as we are required to do, in the larger context of the Tort Claims Act and its pertinent legislative history.
**350 Within ninety days of the accident -- the date when the cause of action accrued -- O'Donnell's attorney served her otherwise sufficient notice on the State, rather than the NJTA. The NJTA, a public entity *795 separate from and independent of the State, did not receive O'Donnell's notice of claim until her new attorney served the notice approximately six-and-one-half months after the fatal accident.
There is no allegation that the NJTA did anything to impede timely service, and the statute in its current form imposes no obligation on the State to forward the notice of claim to the NJTA or to notify O'Donnell of her counsel's error. Furthermore, we acknowledge that attorney negligence or malpractice, in and of itself, does not surpass the extraordinary circumstances threshold. See D.D., 213 N.J. at 156, 61 A.3d 906 ("[W]e cannot agree that an attorney's inattention to a file, or even ignorance of the law, equates with extraordinary circumstances for tort claims purposes."). However, O'Donnell submits proofs beyond her attorney's error that, when considered in their totality, demonstrate extraordinary circumstances.
Importantly, it is apparent that O'Donnell did not sit on her rights. Well within ninety days of the accident that killed her husband and daughter, O'Donnell diligently sought to pursue her claims against the NJTA and retained an attorney to guide her through the process. The attorney prepared a notice of claim that adequately described the date, location, and circumstances surrounding the fatal three-vehicle accident. The notice listed the NJTA as the responsible agency and alleged that the NJTA's failure to install safety barriers preventing vehicles from crossing into oncoming traffic caused the tragic deaths of her husband and daughter.
Although the NJTA did not receive O'Donnell's notice of claim within the ninety-day window, the NJTA timely received a nearly identical notice of claim from Morales, the ambulance driver involved in the fatal three-car collision. Morales served a detailed notice of claim on the NJTA on the same day O'Donnell's attorney **351 served her notice of claim on the State. Morales's notice apprised the NJTA of the collision's date, location, and pertinent details.[6] It listed the NJTA as the responsible public entity and included as its theory of liability against the NJTA that it should have installed safety barriers to prevent vehicles from crossing into oncoming traffic. Importantly, Morales attached the police report to his notice of claim, which explicitly named Timothy and B.O. and indicated that they died in the collision.
Analyzing O'Donnell's and Morales's notices together, in combination with the circumstances surrounding this terrible accident, we find that the NJTA was notified of its potential liability within ninety days of the accident. Through Morales's notice of claim, the NJTA had actual written notice of a potential defect on the Turnpike -- the lack of safety barriers near Interchange 14C -- within ninety days of the accident; it was thus in a position to correct the defect. The NJTA similarly learned that at least one party to the multi-vehicle accident sought to hold it liable for a specific Turnpike defect and was put on notice that other individuals involved in the collision -- including Timothy and B.O., who were named in the attached police report -- could bring claims against it under the same theory of liability. In sum, armed with information from Morales's notice, the NJTA could investigate potential claims arising from the accident, prepare a defense, and formulate a plan to remedy promptly any Turnpike defect. Therefore, when O'Donnell finally served her amended notice of claim on the NJTA, *796 it was already aware of its potential liability arising from the accident and was not prejudiced by the untimely filing.
We conclude that the circumstances of this case are extraordinary and that O'Donnell is therefore permitted to file a late notice of claim pursuant to N.J.S.A. 59:8-9. We do so in light of the unique facts presented here, namely that: (1) O'Donnell quickly pursued her claims against the NJTA in good faith and identified **352 the correct responsible party and its address in a properly completed notice of claim, but her attorney improperly served the State; (2) Morales served a timely notice of claim on the NJTA under N.J.S.A. 59:8-8, listing the exact circumstances surrounding the accident and the same theory of liability against the NJTA; and (3) O'Donnell pursued N.J.S.A. 59:8-9's procedure for permission to file a late notice of claim within one year of the accident. Because the legislative purposes of the Tort Claims Act have been satisfied and O'Donnell's untimely filing will not prejudice the NJTA, we conclude that this is not the type of case that the Tort Claims Act intended to weed out.
In the rare case, such as the one before us, where the claimant sets forth adequate proofs indicating that the totality of facts and circumstances are extraordinary, we find it consistent with the Tort Claims Act, its legislative history, our precedent, and the interests of justice to allow the claimant to pursue his or her claims against the public entity. We recognize that the Appellate Division rendered its judgment without knowledge of Morales's notice of claim. Based upon the entirety of the record before us, the NJTA's Rule 4:6-1 motion to dismiss O'Donnell's complaint is denied.
V.
For the reasons set forth above, we reverse the judgment of the Appellate Division, reinstate O'Donnell's complaint, and remand to the trial court for further proceedings.
CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, and FERNANDEZ-VINA join in JUSTICE SOLOMON'S opinion. Justice TIMPONE did not participate.

The child's name has been redacted in the record.

In his notice of claim, he provided the name Eliasar Morales. However, he was improperly referred to in prior proceedings as Elisar Morales.

The surviving minor daughter's wrongful death claim under N.J.S.A. 2A:31-1 is not at issue in this appeal. She may timely file a notice of claim with the NJTA within ninety days of reaching the age of majority. N.J.S.A. 59:8-8.

The timeliness of the complaint is not raised by the parties.

Ohlweiler v. Township of Chatham, 290 N.J. Super. 399, 675 A.2d 1176 (App. Div. 1996).

The NJTA does not contend in this appeal that either O'Donnell's or Morales's notice of claim fails to satisfy the requirements of N.J.S.A. 59:8-4.