**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3514-19

JOHN ESCALANTE,

     Plaintiff-Respondent,

v.

STATE OF NEW JERSEY
DEPARTMENT OF
TRANSPORTATION,
SOMERSET COUNTY,
TOWNSHIP OF BEDMINSTER,

     Defendants-Respondents,

and

MORRIS COUNTY,
TOWN OF POTTERSVILLE,
TOWNSHIP OF TEWKSBURY,
and TOWNSHIP OF WASHINGTON,

     Defendants,

and

HUNTERDON COUNTY,

     Defendant-Appellant.

_____

Argued May 5, 2021 – Decided June 3, 2021

Before Judges Fuentes, Whipple and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket Number L-0617-20.

James M. McCreedy argued the cause for appellant Hunterdon County (Wiley Malehorn Sirota & Raynes, attorneys; James M. McCreedy, of counsel and on the briefs; Michael J. Skapyak, on the briefs).

Cleary Giacobbe Alfieri Jacobs, LLC, attorneys for Somerset County, join in the brief of appellant Hunterdon County.

DiFrancesco, Bateman, Kunzman, Davis, Lehrer & Flaum, PC, attorneys for Bedminster Twp., join in the brief of appellant Hunterdon County.

Gurbir S. Grewal, Attorney General, attorney for The State of New Jersey, joins in the brief of appellant Hunterdon County.

Thomas J. Manzo argued the cause for respondent (Szaferman, Lakind, Blumstein & Blader, PC, attorneys; Craig J. Hubert, of counsel and on the brief; Thomas J. Manzo and Reena Pushpangadan, on the brief).

PER CURIAM

Defendant Hunterdon County appeals from a May 4, 2020 order granting plaintiff John Escalante's motion for leave to file and serve a late notice of claim

2

against it and co-defendants, public entities and employees, pursuant to the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3. We affirm.

I.

The following facts are derived from the motion record. On May 4, 2019, plaintiff, a forty-nine-year-old United States Marine Corps Master Gunnery Sergeant, was seriously injured in a bicycle accident during a ninety-mile bicycling training expedition with his team while traversing the Lamington River Bridge in Pottersville, which connects Hunterdon and Somerset Counties. Plaintiff lost control of his bicycle and crashed headfirst into an open metal grate-type bridge, and suffered a subarachnoid hemorrhage; loss of consciousness; traumatic brain injury; post-concussion syndrome; maxillofacial fractures and lacerations; a right-hand fracture; and back, wrist, and knee sprains and strains. His nose and facial soft tissue were "torn from his face." Plaintiff described the dangerous condition in his TCA notice of claim as defendant's negligent maintenance of the bridge and failure to warn of the metal grating on the bridge.

Plaintiff was transported by ambulance to Morristown Medical Center and spent four days in the Intensive Care Unit. Within ninety days of the accident, plaintiff underwent three "extensive" surgeries related to the accident, including

fixation of plates and screws to bones in his skull, interior nasal reconstruction, rhinoplasty, mandibular fracture repair with wiring, dental bridges, and dental implants. His jaw was wired shut for ten days following the accident.

Plaintiff was a combat Marine who was deployed to Iraq on three occasions and is now on reserve status. After witnessing "abominable acts" to other Marines and civilians in Iraq and being engaged in active combat in "third-world-country conditions," plaintiff developed post-traumatic stress disorder (PTSD), which he claims was aggravated by the subject accident. His exacerbated PTSD symptoms included severe anxiety, flashbacks, hallucinations, depressive mood, and intense periods of fear.

In his revised affidavit submitted in opposition to defendant's motion, plaintiff stated he was discharged from Morristown Medical Center on May 9, 2019, and was "barely able to eat, drink or speak properly." He also suffered from "severe headaches," was instructed not to drive by his surgeon because plaintiff was recuperating from facial surgery and was taking Percocet for pain management. Plaintiff's surgeries were performed on multiple dates through and including January 14, 2020.

It is undisputed that plaintiff did not file a TCA notice within ninety days of the May 4, 2019 accident, but filed the notice within one year of the incident

A-3514-19

on February 11, 2020. By the time the TCA notice was filed, plaintiff had undergone ten surgeries. On March 20, 2020, plaintiff filed a notice of motion for leave to file and serve a late notice of claim. In his initial moving affidavit, plaintiff attested to "experiencing depression, anxiety, insomnia, flashbacks and hallucinations," and was "advised by [his] doctors to focus on improving [his] physical and mental health." Plaintiff also represented he "was essentially confined to [his] bed for surgical recovery and mandatory doctor appointments" and could not meet with his counsel until February 5, 2020. The TCA notice was filed six days later on February 11, 2020. Defendant filed opposition to plaintiff's motion but did not request a plenary hearing.

The trial court scheduled an initial hearing on April 16, 2020, and allowed all of the parties to supplement the record. In response, plaintiff submitted a revised affidavit dated April 24, 2020, and an affidavit from Dr. Martin Weinapple, a board-certified psychiatrist. In his revised affidavit, plaintiff stated he was unable to drive until "August 6, 2019," when, accompanied by his wife, he managed to drive a short distance, and that he "withdrew from social situations following the trauma." Plaintiff claimed he was "unaware of the ninety[-]day rule for filing a notice of tort claim against a public entity" and

5

"even if [he] had known, [he] was in no physical or mental condition to seek legal representation at that time."

Dr. Weinapple certified that at the request of plaintiff's counsel, a one-hour video-conference interview and evaluation of plaintiff was conducted to assess whether he "sustained new and/or aggravated preexisting psychiatric injuries as a result of a May 4, 2019 bicycle accident, and if any such psychiatric injuries played a role in preventing [him] from seeking legal recourse in the months after his accident." In his certification, Dr. Weinapple noted he "personally observed" plaintiff having "cognitive impairment," "distractibility and impairment of his concentration and attention," indicative of his post-concussive syndrome. Dr. Weinapple concluded that plaintiff "suffered from disabling psychiatric and psychological injuries" during the three months following his accident that "would have prevented him from seeking legal counsel or initiating any type of recourse within the first three-to-six months after the accident."

Defendant supplemented the record with public social media information posted by plaintiff. According to his public Twitter account, plaintiff was "tweeting" and "retweeting" during the ninety-day timeframe following the accident, and thereafter, a public Instagram account, veteranwithacamera,

6

depicted plaintiff dressed in his Marine uniform on June 14, 2019, Flag Day, at an Army Week Gala. His public Twitter account revealed a picture of plaintiff attending a military marquee event on October 3, 2019, known as "[New York City's] Change of Command." Approximately five months after the accident, plaintiff was in a tagged photo on an Instagram account with a portion of his nose missing commenting, "Rahhhhh!!!" beneath the post.

In addition, defendant submitted to the trial court a picture found on Twitter of plaintiff posing with Alex Rodriguez dated November 11, 2019, and another picture of plaintiff on the set of Fox News on December 2, 2019, after he appeared on the show. Defendant submitted plaintiff's Twitter feed to the court, revealing he was frequently engaging with his followers.

On May 4, 2020, the trial court heard oral argument after considering the supplemental certifications submitted by counsel. The trial court granted plaintiff's motion for leave to file and serve a late notice of claim under the TCA, concluding that plaintiff established the requisite reasons constituting extraordinary circumstances under N.J.S.A. 59:8-9 for his failure to file a timely notice of claim. In its oral decision following argument, the trial court stated that plaintiff consulted with an attorney "within a reasonable time" following the accident after he was able to "reintegrate." The court found plaintiff's

affidavits and Dr. Weinapple's certification constituted "credible evidence," and

"no specific showing of prejudice" was provided by defendant.

The trial court noted that plaintiff made "some progress over six months"

following the accident but he still had symptoms.  Further, the court elaborated:

> We know that [N.J.S.A.] 59:8-9 does not define extraordinary circumstances.  But the [c]ourt notes that in common parlance the term would be unique or unusual, and it's for the courts to determine on a case-by-case [basis] what constitutes extraordinary circumstances.  That's the Ohlweiler v. Township of Chatham, 290 N.J. Super. [399,] 404 [(App. Div. 1996)] [case].
>
> The defendants rely upon the O'Neill [v.] City of Newark case, 304 N.J. Super. 543 [(App. Div. 1997)].  That case is distinguishable.  However, in that case the plaintiff's only in-patient hospital confinement was from October 9th to October 16th, this was in 1995, when he underwent surgery, and prior to that on the night of the injury he was initially treated only in the trauma unit and discharged to his home as stable.  So, there is a significant difference in terms of the medical, the physical injuries, in that case compared to this case.  The [c]ourt noted in O'Neill, quote, "It was the plaintiff's obligation to seek legal advice as to his remedies, as long as he is physically and psychologically capable."  [Id. at 553.]  And that is the standard that the [c]ourt looked at.
>
> The [c]ourt further noted the psychologist's observation that the plaintiff should have received counseling immediately after the accident does not mean that he could not function sufficiently to appreciate the need to seek advice as to possible

A-3514-19

liability for the injuries. The [c]ourt in O'Neill noted that the plaintiff was able to leave his home, [take] trips to various doctors in the days after the accident, and neither the plaintiff nor the psychological examination provided sufficient proof that he did not have the mental capacity to contact an attorney.

So, that is a far different setting than what I have here, considering the affidavits and certification from Dr. Weinapple. Dr. Weinapple specifically addresses this issue by saying that the May 2019 bicycle accident was a serious physical, emotional and psychological trauma, that's superimposed by [plaintiff's] prior relevant psychiatric history. Not only did the bike trauma aggravate and exacerbate his PTSD symptoms, but high anxiety and depression. It brought back flashbacks and he experienced hallucinations, (indiscernible) to disabling fear where he needed to avoid public contact. These serious symptoms were interwoven with the traumatic injury with post-concussion syndrome and the physical facial injuries that require[d] the need of surgery.

Dr. Weinapple further provides [plaintiff] sustained a severe and disabling psychiatric exacerbation of his post-traumatic stress disorder as a result of the bicycle accident, which was only further intensified by his traumatic brain injury and the symptoms accompanying that injury.

Dr. Weinapple says that it is his opinion that [plaintiff] suffered from disabling psychiatric and psychological injuries during that time, and prevented him from basic reintegration into [the] public. The severe limitation endured for some time, and Dr. Weinapple says that the nature of the psychiatric symptoms and their effect on [plaintiff] would have prevented him from seeking legal counsel or initiating

any type of recourse within the first three to six months after the accident.

In addition, the trial court found there was "no specific showing of prejudice . . . provided to the [c]ourt." The court granted plaintiff's motion and entered a memorializing order. This appeal ensued.

On appeal, defendant argues the trial court erred in finding extraordinary circumstances based on plaintiff's sworn statements and Dr. Weinapple's certification. Defendant also asserts it is substantially prejudiced by the late notice of claim because it was deprived of the opportunity to investigate the matter and to review key evidence—the condition of the bridge shortly after plaintiff's accident. In the alternative, defendant seeks a reversal and remand to engage in discovery and to conduct a plenary hearing.

## II.

"Pursuant to the express terms of the [TCA], we review a trial court's application of the extraordinary circumstances exception for abuse of discretion." O'Donnell v. N.J. Tpk. Auth., 236 N.J. 335, 344 (2019) (citing D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 147 (2013)); accord N.J.S.A. 59:8-9 (assigning the determination as to whether late notice may be filed to "the discretion of a judge of the Superior Court"). "Generally, we examine 'more carefully cases in which permission to file a late claim has been denied than

10

those in which it has been granted, to the end that wherever possible cases may be heard on their merits. . . .'" Lowe v. Zarghami, 158 N.J. 606, 629 (1999) (quoting Feinberg v. DEP, 137 N.J. 126, 134 (1994)). Therefore, "any doubts" as to whether extraordinary circumstances exist "should be resolved in favor of the application." Ibid. (quoting Feinberg, 137 N.J. at 134).

The TCA "imposes strict requirements upon litigants seeking to file claims against public entities." McDade v. Siazon, 208 N.J. 463, 468 (2011), and governs when public entities are liable for their torts. Nieves v. Adolph, 241 N.J. 567, 571 (2020). Chapter eight of the TCA provides that "no action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented" to the appropriate public entity in a written notice of claim. N.J.S.A. 59:8-3; see N.J.S.A. 59:8-4 to -7. "A claim relating to a cause of action for death or for injury or damage to person or to property shall be presented as provided in this chapter not later than the [ninetieth] day after accrual of the cause of action." N.J.S.A. 59:8-8. However, "the notice provisions of the [TCA] were not intended as a 'trap for the unwary.'" Lowe, 158 N.J. at 629 (citation omitted). Thus, the Legislature provided:

> A claimant who fails to file notice of his claim
> within 90 days as provided in section 59:8-8 of this act,

may, <u>in the discretion of a judge of the Superior Court</u>, be permitted to file such notice . . . within one year after the accrual of his claim provided that the public entity or the public employee <u>has not been substantially prejudiced</u> thereby. Application to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting <u>extraordinary circumstances</u> for his failure to file notice of claim within the period of time prescribed by section 59:8-8 of this act or to file a motion seeking leave to file a late notice of claim within a reasonable time thereafter[.]

[N.J.S.A. 59:8-9 (emphasis added).]

Thus, if a claimant seeks to present a late notice of claim pursuant to the TCA, "the grant or denial of remedial relief is 'left to the sound discretion of the trial court, and will be sustained on appeal in the absence of a showing of an abuse thereof.'" <u>McDade</u>, 208 N.J. at 476-77 (citation omitted). We must adhere to this standard of review.

"Extraordinary circumstances" became the standard for analyzing late tort claim notices in 1994 when our Legislature amended the TCA, replacing the "sufficient reasons" standard, which had been "a fairly permissive standard," with the "extraordinary circumstances" standard, a "more demanding" threshold. <u>Lowe</u>, 158 N.J. at 625; <u>see also</u> <u>D.D</u>, 213 N.J. at 148 (characterizing the 1994 amendment as imposing a "more exacting standard"); <u>Rogers v. Cape May Cnty.</u>

12

Office of Pub. Def., 208 N.J 414, 428 (2011) (finding that the purpose of the 1994 amendment "was to raise the bar for the filing of a late notice"). To avoid "excessive or inappropriate exceptions" to the general rule of sovereign immunity, judges assessing proffered reasons for late tort claim notices must be "mindful of the Legislature's direction that the proofs demonstrate circumstances that are not merely sufficient, but that they instead be extraordinary." D.D., 213 N.J. at 149.

In determining whether extraordinary circumstances justify a delay in filing the notice of claim, a court must focus on evidence of a plaintiff's situation during the ninety-day period following the accrual date. See D.D., 213 N.J. at 151. A court "must consider the collective impact of the circumstances offered as reasons for the delay." R.L. v. State-Operated Sch. Dist., 387 N.J. Super. 331, 341 (App. Div. 2006); see also Mendez v. S. Jersey Transp. Auth., 416 N.J. Super. 525, 533 (App. Div. 2010).

Medical conditions meet the extraordinary circumstances standard if they are "severe or debilitating" and have a "consequential impact on the claimant's very ability to pursue redress and attend to the filing of a claim." D.D., 213 N.J. at 149-50; see also Mendez, 416 N.J. Super. at 533 (noting that "extraordinary circumstances can be found based on the severity of a party's injuries"). The

question for the judge is whether, when viewed objectively, a severe or debilitating injury impaired the plaintiff's ability to act during the relevant ninety-day period. D.D. 213 N.J. at 151. Credibility issues warrant a hearing so that the trial court can make findings of fact.

In Maher v. Cnty. of Mercer, 384 N.J. Super. 182, 189 (App. Div. 2006), we found that the "circumstances that led to the delay in filing the notice and the motion were truly extraordinary." The plaintiff was hospitalized after receiving a burn, which then caused septic shock, a staph infection, pneumonia, respiratory failure, and memory loss. Id. at 184-85. The plaintiff was placed in an induced coma during her first hospitalization, because she was not expected to live, remained in "extremely poor health," and had repeated admissions to the hospital within the ninety-day period. Id. at 189-90.

In R.L., the plaintiff was a student who had contracted the Human Immunodeficiency Virus (HIV) from a sexual relationship with a teacher. 387 N.J. Super. at 334, 341. The delay in filing was due to the plaintiff's psychological trauma, which caused him emotional distress, periods of crying, preoccupation with death, and ultimately a hesitancy to reveal his HIV status. Id. at 341. We held that the plaintiff had established extraordinary

A-3514-19

circumstances justifying the late filing of a notice of claim against the school district because of the "stigma [of HIV] recognized by our courts." Ibid.

However, not all medical conditions will meet the extraordinary-circumstances standard to justify filing a late tort claim notice. In D.D., the plaintiff claimed to suffer from shock, stress, anxiety, fatigue, depression, the inability to perform as a public speaker, and overall deterioration of her physical and mental health resulting from the defendant's disclosure of her confidential health information in a press release. 213 N.J. at 137-39. The Court found "there [was] no evidence that these complaints were of sufficient immediate concern to her or were so significant in nature that she sought medical care to address them." Id. at 150. The Court stated the record lacked "evidence . . . that plaintiff was prevented from acting to pursue her complaint or that her ability to do so was in any way impeded by her medical or emotional state." Id. at 151.

In O'Neill, 304 N.J. Super. at 553-54, we held that a plaintiff preoccupied with recovery and treatment efforts did not adequately show extraordinary circumstances to justify a delay in filing a timely notice when he failed to demonstrate that he had lacked the mental capacity to contact an attorney. The plaintiff had a bullet wound to his leg, went to the hospital the day of his injury, lost neurological function to his leg due to nerve damage, had surgery two

15

months after the shooting, was hospitalized for four days, wore a leg brace all day, had to use a portable commode for three months, was confined to his home, and was unable to work for six months. Id. at 546-47. We affirmed the trial court's denial of the plaintiff's motion for leave to file a late tort claim notice.

"In determining whether a notice of claim under N.J.S.A. 59:8-8 has been timely filed, a sequential analysis must be undertaken" by the court. Beauchamp v. Amedio, 164 N.J. 111, 118 (2000).

> The first task is always to determine when the claim accrued. The discovery rule is part and parcel of such an inquiry because it can toll the date of accrual. Once the date of accrual is ascertained, the next task is to determine whether a notice of claim was filed within ninety days. If not, the third task is to decide whether extraordinary circumstances exist justifying a late notice.
>
> [Id. at 118-19.]

Typically, a claim accrues at the time of injury. Here, it is undisputed that the claim accrued on the date of the accident, May 4, 2019, and that plaintiff did not submit his notice of claim within ninety days of the accrual date. Having reviewed the record in light of the well-established precedents, we conclude that the trial court did not abuse its discretion in granting plaintiff's motion. O'Donnell, 236 N.J. at 344.

16

Plaintiff's certified notice detailed his extensive physical, psychological, and psychiatric injuries resulting from the accident, along with "permanent deformities." We are convinced plaintiff's certified notice, together with his moving affidavit and revised affidavit, detailed injuries which appear sufficiently "severe and debilitating" to vault the extraordinary circumstances standard under N.J.S.A. 59:8-9 and D.D., 213 N.J. at 149. And, plaintiff submitted medical treatment records to the trial court and the certification of Dr. Weinapple. Our Court has made clear that a decision to grant or deny leave to file a notice of claim should be made only after a careful analysis of the circumstances in each case. Lowe, 158 N.J. at 629.

Here, the trial court had a thorough and sufficient record upon which to find that plaintiff's injuries prevented him from filing a notice of claim within the ninety-day time period. D.D., 213 N.J. at 151. We are satisfied that the facts set forth in the certified submissions by plaintiff and his counsel represent an extraordinary situation, and no further exploration was required by the trial court prior to its exercise of discretion under N.J.S.A. 59:8-9. The trial court gave "proper consideration to the traumatic ramifications of the catastrophic life-altering injuries plaintiff suffered in this accident." Jeffrey v. State, ___ N.J. Super. ___ (App. Div. 2021) (slip op. at 8). We conclude that the trial court was

17

well within its authority to decide plaintiff's motion on the basis of written submissions, and no genuine issue of material fact warranted a plenary hearing. Beyer v. Sea Bright Borough, 440 N.J. Super. 424, 432 (App. Div. 2015).

Finally, Hunterdon County contends it would be prejudiced by the filing of a late notice. Specifically, it argues that "the condition of the bridge as it existed on the date of [p]laintiff's accident had been altered due to weather conditions and "it is likely witnesses' memories have faded due to the passage of time." The County did not support its arguments with certifications or other legally competent evidence.

"[I]t is the public entity that has the burden of coming forward and of persuasion on the question of [substantial] prejudice." Blank v. City of Elizabeth, 318 N.J. Super. 106, 114 (App. Div. 1999). "The fact of delay alone does not give rise to the [presumption] of prejudice; the public entity must present a factual basis for the claim of substantial prejudice." Mendez, 416 N.J. Super. at 535 (citing Kleinke v. City of Ocean City, 147 N.J. Super. 575, 581 (App. Div. 1977)). "Substantial prejudice must be shown by 'specificity and not by general allegation[.]'" Id. at 536 (quoting Blank, 318 N.J. Super. at 115). A contention of a defendant being "totally unaware of the accident" and having "lost a critical opportunity to engage in timely investigation" is insufficient to

18

constitute the substantial prejudice requirement under N.J.S.A. 59:8-9.  Id. at 535.  Substantial prejudice "[g]enerally . . . implies the loss of witnesses, the loss of evidence, fading memories, and the like."  Blank, 318 N.J. Super. at 115.

As the trial court noted, the County did not assert anything to show substantial prejudice.  Moreover, nothing in the record suggests substantial prejudice would inure to the County or other defendants in the form of missing evidence or information relating to the accident.  Indeed, plaintiff was transported from the accident scene by ambulance to the hospital.  Undoubtedly, a contemporaneous report was prepared and would have provided the County and defendants with a recitation of the conditions on the date of the accident and identified or led to the names of potential witnesses in aid of the County and defendants' defense.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3514-19