**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4008-23

LARRY FLEMING,

    Plaintiff-Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS and NEW
JERSEY STATE PRISON,

    Defendants-Respondents.

_____

Submitted November 13, 2025 – Decided December 8, 2025

Before Judges Marczyk and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-1947-23.

Larry Fleming, self-represented appellant.

Matthew J. Platkin, Attorney General, attorney for respondents (Sookie Bae-Park, Assistant Attorney General, of counsel; Elizabeth Merrill, Deputy Attorney General, on the brief).

PER CURIAM

Plaintiff Larry Fleming appeals from the trial court's January 26, 2024 order denying his motion for leave to file a late notice of tort claim against defendants New Jersey Department of Corrections and New Jersey State Prison (collectively DOC), and the court's July 5, 2024 order denying his motion for reconsideration.[1] The primary issue on appeal is whether the trial court erred in finding plaintiff failed to meet the "extraordinary circumstances" requirement under N.J.S.A. 59:8-9. We affirm.

I.

On or about January 17, 2023, the DOC received correspondence addressed to plaintiff from his mother, which included, among other things, his father's certificate of death from the State of Alabama. However, the DOC did

---

[1] Although plaintiff failed to reference the trial court's January 26, 2024 order in his notice of appeal, it was referenced in his case information statement. The comments to Rule 2:5-1 provide: "Inasmuch as the case information statement must be filed with the notice of appeal, failure to identify an issue in the notice of appeal may be saved by identification in the case information statement filed with the notice of appeal." Pressler & Verniero, Current N.J. Court Rules, cmt. 5.1 on R. 2:5-1, at 506 (2026); see also Synnex Corp. v. ADT Sec. Servs., Inc., 394 N.J. Super. 577, 588 (App. Div. 2007) (reviewing a reconsideration order that was identified in the case information statement but not in the notice of appeal). Accordingly, we consider plaintiff's arguments regarding this order.

not deliver the death certificate to plaintiff because it was "[n]ot [a]uthorized for [plaintiff's r]etention."[2]

Two days later, on January 19, plaintiff submitted an inquiry form via the Inmate Remedy System,[3] seeking clarification as to why his father's death certificate was not delivered to him. The DOC responded, stating: "Anything with a raised seal is not authorized. We can provide you with a copy of this certificate. You should submit the proper paperwork to have this item sent out or destroyed at your request." Plaintiff wrote back, advising he gave the mail department a stamped, addressed envelope so the original document could be returned to the sender. The DOC informed plaintiff, "[t]hat is not the proper procedure," and advised him to complete the following forms: CO-24 Outgoing Package Invoice; CO-30 Business Remit; CO-30A Postage Remit; and S-25 First/Final Notice.

On March 1, plaintiff informed the DOC he had completed the appropriate forms and asked whether the death certificate had been mailed back yet. The DOC told plaintiff the death certificate would "be mailed out shortly." Plaintiff

---

[2] The correspondence also included a certificate of cremation, obituary, and photograph, all of which the DOC delivered to plaintiff.

[3] The Inmate Remedy System allows inmates to communicate with correctional facility staff to address issues, concerns, or file complaints.

A-4008-23

followed up on the status of the matter on March 18. On April 7, plaintiff had not heard back yet, so he filed a grievance. On April 19, the DOC replied: "On [March 10, 2023] and [March 27, 2023,] the [b]usiness [o]ffice stated that there was no money in your account to have this mailed out. Once the funds are available, this will be processed and sent out." It wrote plaintiff again on May 2, informing him, "[a]ttempts were made to have this item sent out but you did not have the funds in your account," however, "[t]his item was finally sent out on [April 19, 2023]."

Plaintiff filed an internal appeal on May 16, 2023, and argued if his inmate account does not have sufficient funds the DOC is supposed to, "at its own cost," mail the correspondence and then seek reimbursement. He asserted the mailroom did not adhere to proper rules and procedures, and, additionally, sent the death certificate back to the sender via certified mail instead of regular postage, which would have been cheaper.

On May 18, 2023, plaintiff filed a second grievance with the DOC, seeking $11.24 in reimbursement for the extra cost of postage and an additional $9,200 for purported exemplary damages. The DOC replied, informing plaintiff filing a grievance was "not the proper forum for this request/demand." A few days later, on May 25, plaintiff responded: "So, am I to assume [the DOC is]

not going to give me a refund . . . and/or $100.00 per day for holding the withheld correspondence from January 17, 2023 to April 19, 2023 . . . ." In return, the DOC told plaintiff, "[y]ou are correct." Plaintiff subsequently requested a copy of the DOC's decision, which he received on or about July 7, 2023.

On or about September 7, 2023, plaintiff mailed a notice of tort claim and motion for leave to file a late notice of tort claim to the State Department of Treasury, New Jersey Attorney General, and Clerk of the Superior Court for Mercer County. However, the claim was not filed with the court until October 12, 2023. The Law Division denied plaintiff's motion on January 26, 2024, stating:

> Plaintiff's cause of action arose when the death certificate was allegedly withheld around January 17, 2023. Even if . . . [p]laintiff's cause of action is deemed to have accrued no later than May 26[, 2023], which . . . [p]laintiff states without further explanation is when the "[Tort Claims Act] remedies were exhausted," the ninety-day period would have expired no later than August 24[, 2023]. However, this motion was not filed on E-Courts until October 12, 2023. Hence, . . . [p]laintiff must now demonstrate "sufficient reasons constituting extraordinary circumstances" for the delay in filing the initial notice of claim and show that the public entity or employee has not suffered substantial prejudice due to the delayed notice.
>
> . . . .

Ultimately, . . . plaintiff falls short of providing additional reasons to meet the standard of extraordinary circumstances, relying primarily on the alleged complexities of the prison law library procedures and access to paralegals for inmate assistance. Notably, . . . plaintiff has filed several lawsuits while incarcerated, . . . which indicate a familiarity with the legal process.

Lack of access to a law library is insufficient grounds for excusing the passage of the limitation period. . . . [Plaintiff] ha[d] access to a notice of claim form, which can be completed independently without the need for the law library . . . . [P]laintiff had the opportunity to submit a timely notice of claim form . . . .

. . . [T]he [c]ourt denies . . . [p]laintiff's motion to file a late claim based on the failure to demonstrate extraordinary circumstances.

Thereafter, plaintiff moved for reconsideration, which was denied by the trial court on July 5, 2024. This appeal ensued.

II.

Plaintiff argues the trial court erred in denying his motion for leave to file a late notice of claim, and in denying his subsequent motion for reconsideration, because he satisfied the extraordinary circumstances requirement of N.J.S.A. 59:8-9. Specifically, he contends the trial court abused its discretion in "not giving proper consideration that [he] is a laym[a]n and a[n] incarcerated inmate"

6

A-4008-23

who had restricted access to the prison law library and the prison paralegal without advance permission from DOC officials.  He asserts these restrictions presented extraordinary circumstances.  Plaintiff argues each time he requested access to the prison law library or to receive the assistance of a paralegal, the screening and approval process took a minimum of three weeks, impacting his ability to file a timely tort claims notice.

"Pursuant to the express terms of the Tort Claims Act, we review a trial court's application of the extraordinary circumstances exception for abuse of discretion."  O'Donnell v. N.J. Tpk. Auth., 236 N.J. 335, 344 (2019); see also N.J.S.A. 59:8-9 (leaving it to "the discretion of a judge of the Superior Court" when determining whether a late notice may be filed).  "A court abuses its discretion when its 'decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'"  State v. Chavies, 247 N.J. 245, 257 (2021) (quoting State v. R.Y., 242 N.J. 48, 65 (2020) (internal quotation marks omitted)).  "When examining a trial court's exercise of discretionary authority, we reverse only when the exercise of discretion was 'manifestly unjust' under the circumstances."  Newark Morning Ledger Co. v. N.J. Sports & Exposition Auth., 423 N.J. Super. 140, 174 (App.

A-4008-23

Div. 2011) (quoting Union Cnty. Improvement Auth. v. Artaki, LLC, 392 N.J. Super. 141, 149 (App. Div. 2007)).

"The New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to :12-3, is the statutory mechanism through which our Legislature effected a waiver of sovereign immunity." D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 133 (2013). "The guiding principle of the Tort Claims Act is that 'immunity from tort liability is the general rule and liability is the exception . . . .'" Coyne v. State, Dep't of Transp., 182 N.J. 481, 488 (2005) (quoting Garrison v. Twp. of Middletown, 154 N.J. 282, 286 (1998)). "Among the most important limitations that the Act imposes on would-be claimants are . . . the statutory provisions that govern a claimant's obligation to file a notice of tort claim as a prerequisite to initiating litigation." D.D., 213 N.J. at 134 (citing N.J.S.A. 59:8-1 to -11).

Under N.J.S.A. 59:8-8:

> A claim relating to a cause of action for death or for injury or damage to person or to property shall be presented as provided in this chapter not later than the [ninetieth] day after accrual of the cause of action. . . . The claimant shall be forever barred from recovering against a public entity or public employee if:
>
> a.    [t]he claimant failed to file the claim with the public entity within [ninety] days

of accrual of the claim except as otherwise provided in N.J.S.[A.] 59:8-9 . . . .

N.J.S.A. 59:8-9, in pertinent part, provides:

A claimant who fails to file [a] notice of [their] claim within [ninety] days . . . may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of [their] claim provided that the public entity or the public employee has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for [their] failure to file notice of claim within the period of time prescribed by [N.J.S.A.] 59:8-8 . . . .

Thus, N.J.S.A. 59:8-9 provides a claimant may "file an application for leave to serve a late notice of claim on a showing of extraordinary circumstances, so long as the application is filed within one year of the accrual of the claim and the public entity has not been substantially prejudiced by the delay." O'Donnell, 236 N.J. at 346.

"However, the Legislature left . . . 'extraordinary circumstances' undefined." Ibid. A determination of what constitutes "extraordinary circumstances" is determined "on a case-by-case basis," Rogers v. Cape May Cty. Off. of Pub. Def., 208 N.J. 414, 428 (2011), "with the outcome of each case depending 'on the facts presented,'" O'Donnell, 236 N.J. at 347 (quoting Ventola

9

v. N.J. Veteran's Mem'l Home, 164 N.J. 74, 77 (2000)). "Generally, we examine more carefully cases in which permission to file a late claim has been denied than those in which it has been granted, to the end that wherever possible cases may be heard on their merits . . . ." Lowe v. Zarghami, 158 N.J. 606, 629 (1999) (quoting Feinberg v. State, Dep't of Env't Prot., 137 N.J. 126, 135 (1994) (internal quotation marks omitted)). "[A]n attorney's inattention, or even an attorney's malpractice, [does not] constitute[] an extraordinary circumstance sufficient to excuse failure to comply with the ninety-day filing deadline." D.D., 213 N.J. at 156, 158.

In discussing the Legislature's 1994 adoption of the "extraordinary circumstances" provision, the Court in O'Donnell noted:

> Prior to N.J.S.A. 59:8-9's enactment, a claimant needed only to show that "sufficient reasons"—rather than extraordinary circumstances—prevented the filing of a timely notice of claim. Lowe, 158 N.J. at 625. This change of language signaled the enactment of a "more demanding standard," id. at 625-26, and "raise[d] the bar for the filing of a late notice" of claim. Rogers, 208 N.J. at 428.
>
> [236 N.J. at 346 (alteration in original) (citations reformatted).]

Given that legislative purpose, our courts have generally applied the exception in a stringent manner. See, e.g., D.D., 213 N.J. at 156 (noting that "an attorney's

10

inattention to a [client's] file, or even ignorance of the law," does not equate with "extraordinary circumstances" to justify a late filing); O'Neill v. City of Newark, 304 N.J. Super. 543, 552-54 (App. Div. 1997) (finding no extraordinary circumstances when a plaintiff failed to file a notice within ninety days after being hospitalized due to a gunshot injury to his leg). As our Supreme Court has instructed:

> The Legislature's grant of authority to trial courts to permit a late notice in the exercise of their discretion does not equate with a grant of authority to override the statute's declaration of purpose or to substitute a lesser standard of proofs for the extraordinary circumstances demanded by the 1994 amendment to the statute itself.
>
> [D.D., 213 N.J. at 148.]

We conclude the court did not misapply its discretion in denying plaintiff's application to file a late tort claims notice. Our courts typically only find the presence of extraordinary circumstances warranting the late filing of a notice in cases in which the plaintiff: could not have known about the involvement of a public entity or public employee; was misled by the public entity; or suffered serious physical injuries during the filing period, to the extent the plaintiff was incapacitated. See Lowe, 158 N.J. at 629-30 (finding the plaintiff had no reason to suspect the defendant physician who treated her was associated with a public entity because the defendant treated the plaintiff at a private hospital); Jeffrey

v. State, 468 N.J. Super. 52, 58-59 (App. Div. 2021) (noting the plaintiff was physically paralyzed and suffered "catastrophic, life-altering injuries," and, thus, acknowledging "seeking an attorney to investigate the legal intricacies of a potential lawsuit was not among [the] plaintiff's most pressing concerns" during those "difficult times" as sufficient to constitute "extraordinary circumstances"); Maher v. Cnty. of Mercer, 384 N.J. Super. 182, 189-90 (App. Div. 2006) (explaining because the plaintiff was hospitalized, placed into an induced coma, and was not expected to survive, the plaintiff's circumstances fell within the meaning of "extraordinary").  Here, plaintiff was aware, at all times, the DOC was a public entity, he was not misled by the DOC, and he was not incapacitated during the filing period.

We are further unpersuaded by plaintiff's contention the trial court erred in not finding his incarcerated status and restricted access to the law library constituted "extraordinary circumstances."  "Although deference will ordinarily be given to the factual findings that undergird the trial court's decision, the court's conclusions will be overturned if they were reached under a misconception of the law."  D.D., 213 N.J. at 147 (citing McDade v. Siazon, 208 N.J. 463, 473-74 (2011)).  In D.D., for example, our Supreme Court found a

12

misconception of the law in the trial court's decision to grant the claimant leave to file a late notice.  See id. at 158.

If there was any question previously as to whether the circumstances must be truly "extraordinary" to warrant a late notice, D.D. laid that doubt to rest. Ibid.  There, the Court held the claimant's assertions of medical problems, and her attorney's failure to follow up on her claims and file a timely notice, did not justify permitting her to file a notice about two months after the deadline had passed.  Id. at 149, 157.  The claimant's assertion of inability to address the issue personally, because of psychological and emotional trauma caused by the defendant's conduct, did not warrant relaxing the deadline, id. at 149-51, nor was it sufficient reason that the claimant had received poor legal representation from her attorney, id. at 156-57.  The Court emphasized the Legislature's 1994 amendments to the Tort Claims Act sent a "strong message" that leave to file a late notice of claim "should be granted less frequently."  Id. at 157.

Here, the trial court properly exercised its discretion in denying plaintiff's application insofar as he failed to establish "extraordinary circumstances." Plaintiff's status as an inmate does not constitute "extraordinary circumstances." Moreover, neither his ignorance of the law nor his purported restricted access to a law library are sufficient grounds for excusing the passage of the limitation

13

A-4008-23

period any more than was D.D.'s unfortunate reliance on an attorney who did not follow the law. Given our conclusion plaintiff has not established "extraordinary circumstances" under N.J.S.A. 59:8-9, we need not address whether defendants were substantially prejudiced by the late filing.

To the extent we have not specifically addressed any remaining arguments raised by plaintiff, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-4008-23