**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0465-20

IN THE MATTER OF LEAVE
TO FILE A LATE NOTICE OF
CLAIM PURSUANT TO THE
NEW JERSEY TORT CLAIMS
ACT ON BEHALF OF
LUIS LOPEZ.

_____

Argued October 18, 2021 – Decided November 12, 2021

Before Judges Sumners and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-4030-20.

Christine A. Barris, Deputy Attorney General, argued the cause for appellants University Hospital and Hosseinali Shahidi, M.D. (Andrew J. Bruck, Acting Attorney General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel; Christine A. Barris, on the briefs).

Barry M. Packin argued the cause for respondent Luis Lopez (Seigal Law, LLC, attorneys; Barry M. Packin, of counsel and on the brief).

PER CURIAM

Appellants University Hospital and Hosseinali Shahidi, M.D. appeal from

a Law Division order granting Luis Lopez leave to file a late notice of claim under the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 14-4.[1] Appellants contend the court abused its discretion by granting Lopez's motion without first determining the accrual date of his medical malpractice claim and by granting Lopez's motion in the absence of competent evidence establishing extraordinary circumstance permitting the filing of a late notice of claim. Based on our review of the record, in light of the applicable legal principles, we vacate the court's order and remand for further proceedings.

I.

In support of his motion for leave to file the late notice of claim, Lopez relied on the following facts set forth in his certification and the certification of his counsel. Lopez hurt his back at work in February 2019. Over the following five weeks, he visited emergency rooms seven times at three different hospitals for back pain that grew progressively worse. On April 10, 2019, Lopez made his eighth hospital visit. He went to the emergency department at University Hospital, where he was seen by Dr. Shahidi. Lopez was diagnosed with back

---

[1] Appellants assert that University Hospital is incorrectly identified in Lopez's motion for leave to file the late notice of claim as "University of Medicine and Dentistry of New Jersey, New Jersey Medical School, and Rutgers New Jersey Medical School."

A-0465-20

pain and discharged that day.

The following day, April 11, 2019, Lopez went to Hackensack University Medical Center (HUMC). He underwent emergency surgery after it was determined he had "an expanding lesion . . . in his thoracic spine." Following the surgery, he remained at HUMC until April 30, 2019. On that date, he was transferred to Regent Care Center for rehabilitation, and he remained there until the end of August or beginning of September 2019.

In his certification, Lopez states he has no medical background and that when he learned he had a growth on his spine in April 2019, he "had no idea [he] had a possible malpractice claim." His "only thoughts at that time were to get through [his] surgery and the rehabilitation that [he] needed after [his] surgery." Plaintiff's counsel certified that plaintiff "remains disabled as a result of the failure to timely diagnose and treat the thoracic lesion." The record does not identify Lopez's purported disability.

In plaintiff's proposed late notice of claim, he states that he was seen by Dr. Shahidi at University Hospital on April 10, 2019, and he alleges Dr. Shahidi

> failed to properly assess his condition, failed to properly diagnose his condition, failed to initiate required treatments, failed to diagnose the condition of thoracic spine lesion with spinal cord compression and/or such negligence and deviations from accepted standards of medical care as shall become known

3

through further investigation and discovery.

The notice of claim also avers that the twenty-four-hour delay in diagnosing the lesion – from April 10, 2019, when Dr. Shahidi examined Lopez, to April 11, 2019, when Lopez was seen at HUMC – caused spinal cord and neurological injuries, pain and suffering, emotional distress, and other injuries. Plaintiff's counsel's certification asserts "[t]he delay of more than [twenty-four] hours in initiating treatment could likely have been of significance in [plaintiff's] outcome."

The court heard argument on Lopez's motion for leave to file a late notice of claim. Appellants argued Lopez's claim accrued on April 11, 2019, when he learned at HUMC he had a lesion on his spine requiring immediate surgery that had not been diagnosed the day before by Dr. Shahidi at University Hospital. The court rejected the argument, finding that "[e]ven though on April 11th [plaintiff] was told he had a growth on his spine, the [c]ourt finds that . . . doesn't mean . . . he knew . . . there was any malpractice, that he had a growth on his spine." The court noted that plaintiff

> underwent emergency surgery and remained at Hackensack University Medical Center until April 30th, 2019. From Hackensack, he was transferred

4

directly to [Regent][2] Care Center in Hackensack, New Jersey, and he remained at [Regent] Care Center until the end of August or beginning of September of 2019.

[] Lopez has no medical background at all, and even though in April of 2019, when he found out that he has something growing on his spine, he had no idea there was a possible malpractice claim. In fact, his only thoughts at that time were to get through the surgery and rehab that he needed after the surgery.

And from April 11th until late August or early September[] 2019 he was either in Hackensack University Medical Center or at [Regent] Care Center.

Based on those findings, the court determined Lopez's claim did not accrue prior to his discharge from Regent Care Center in August or September 2019. The court further found Lopez "did not know that he had a medical malpractice claim[,]" prior to his emergency surgery, "and then during the time from April 11th, 2019 he was in the rehab center and he couldn't determine whether or not he had a claim." The court, however, did not determine the actual accrual date of Lopez's claim against University Hospital and Dr. Shahidi.

The court further found Lopez demonstrated "extraordinary circumstances in order to file a late claim," but the court did not make any findings of fact as

---

[2] The transcript reflects that Regent Care Center was misidentified as Region Care Center.

to what those circumstances were.  The court noted only that Lopez's motion was filed on June 15, 2020, which was "within one year of when he found out that he had a claim."

The court entered an order permitting the late filing of Lopez's notice of claim.  This appeal followed.

II.

The TCA "provides 'broad but not absolute immunity for all public entities,'" Jones v. Morey's Pier, Inc., 230 N.J. 142, 154 (2017) (quoting Marcinczyk v. N.J. Police Training Comm'n, 203 N.J. 586, 597 (2010)), and its "'guiding principle' is 'that immunity from tort liability is the general rule and liability is the exception,'" O'Donnell v. N.J. Tpk. Auth., 236 N.J. 335, 345 (2019) (quoting D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 134 (2013)).

The TCA defines the circumstances when a plaintiff may bring tort claims against public entities, see D.D., 213 N.J. at 133-34, and it "establishes the procedure by which claims may be brought," Rogers v. Cape May Cnty. Off. of Pub. Def., 208 N.J. 414, 420 (2011) (quoting Beauchamp v. Amedio, 164 N.J. 111, 116 (2000)).  The TCA requires that a plaintiff asserting tort claims against a public entity or employee serve the entity or employee with a notice of the

6

claim within ninety days of the accrual of the claim.  See N.J.S.A. 59:8-8; see also O'Donnell, 236 N.J. at 345.

The TCA's requirements are "strictly construed."  McDade v. Siazon, 208 N.J. 463, 474 (2011) (quoting Gerber ex rel. Gerber v. Springfield Bd. of Educ., 328 N.J. Super. 24, 34 (App. Div. 2000)).  A plaintiff who fails to timely serve a notice of tort claim "shall be forever barred from recovering against a public entity."  N.J.S.A. 59:8-8.  The harshness of N.J.S.A. 59:8-8's ninety-day requirement, however, is in part alleviated by N.J.S.A. 59:8-9, Rogers, 208 N.J. at 420-21, which "permits a court to allow a plaintiff to file a late notice of claim under 'extraordinary circumstances,' if the motion is made within one year of the accrual of the claim," id. at 427 (alteration in original) (quoting Lowe v. Zarghami, 158 N.J. 606, 613 (1999)); see also O'Donnell, 236 N.J. at 345-46.

"After the one-year limitation has passed, the court is without authority to relieve a plaintiff from his [or her] failure to have filed a notice of claim, and a consequent action at law must fail."  Pilonero v. Twp. Of Old Bridge, 236 N.J. Super. 529, 532 (App. Div. 1989) (quoting Speer v. Armstrong, 168 N.J. Super. 251, 255 (App. Div. 1979)); see also J.P. v. Smith, 444 N.J. Super. 507, 529 (App. Div. 2016) (holding a claimant was "absolute[ly] bar[red]" from recovering against a public entity because the claimant did not file a tort claim

A-0465-20

notice within ninety days of the claim's accrual and did not move for leave to file a late notice of claim within the one-year limitation period).

A "sequential analysis" is required to determine whether a notice of claim is timely filed under N.J.S.A. 59:8-8.  Beauchamp, 164 N.J. at 118.  "The first task is always to determine when the claim accrued."  Ibid.  After the date of accrual is ascertained, the court must "determine whether a notice of claim was filed within ninety days."  Ibid.  When a notice of claim is not filed within ninety days, the court must determine if the claimant demonstrates "extraordinary circumstances exist justifying a late notice" under N.J.S.A. 59:8-9.  Id. at 118-19.  We summarize the principles applicable to each step of the requisite sequential analysis in turn.

As noted, to determine whether a notice of tort claim is timely filed in accordance with N.J.S.A. 59:8-8, a court must first find "the date on which the claim accrued."  Ben Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 133-34 (2017).  N.J.S.A. 59:8-1 provides that under the TCA "accrual shall mean the date on which the claim accrued," but the TCA does not otherwise "define the date of accrual in any significant way."  Beauchamp, 164 N.J. at 116.  Our Supreme Court has found that "[a] claim accrues on the date of the accident or incident that gives rise to any injury, however, slight, that would be actionable

if inflicted by a private citizen." Id. at 123, see also id. at 116 (noting the comment to N.J.S.A. 59:8-1 explains that "the term accrual of a cause of action shall be defined in accordance with existing law in the private sector" (citation omitted)).

The Court has further recognized that private sector law "holds that a claim accrues on the date on which the underlying tortious act occurred," but that the "same common law allows for delay of the legally cognizable date of accrual when the victim is unaware of his [or her] injury or does not know that a third party is [liable] for the injury." Ben Elazar, 230 N.J. at 134. Thus, the Court has applied the discovery rule to determine the date of accrual of a claim under the TCA, ibid., and held that the accrual date for a claim under the TCA "is tolled from the date of the tortious act or injury when the injured party either does not know of his [or her] injury or does not know that a third party is responsible for the injury." Ibid. (citing McDade, 208 N.J. at 475); see also Beauchamp, 164 N.J. at 122.

A court's finding of the accrual date of a claim is essential because it provides the benchmark for the commencement of the ninety-day period during which the claimant must timely file a notice of claim against a public entity or employee. See N.J.S.A. 59:8-8 (requiring the filing of a notice of claim within

ninety days of the accrual date of the claim). The accrual date also provides the start-date for the one-year period within which a late notice of claim may be filed, and the two-year period within which suit against the public entity or employee may be filed. See N.J.S.A. 59:8-9 (providing claimants who fail to file a timely notice of claim within the ninety days required under N.J.S.A. 59:8-8 may be "permitted to file such notice . . . within one year after the accrual of [the] claim," and stating "in no event may any suit against a public entity . . . [or] employee arising under [the TCA] be filed later than two years from the time of the accrual of the claim").

Where a claimant does not file a notice of tort claim within ninety days, he or she "may 'be permitted to file such notice at any time within one year after the accrual of [the] claim'" by showing "'sufficient reasons constituting extraordinary circumstances for [the] failure to file' within ninety days of the accrual of [the] cause of action as required by N.J.S.A. 59:8-8." McNellis-Wallace v. Hoffman, 464 N.J. Super. 409, 417 (App. Div. 2020) (quoting N.J.S.A. 59:8-9). Leave to file a late notice of claim, however, may be granted only if "the public entity or the public employee has not been substantially prejudiced thereby." Ibid. (quoting N.J.S.A. 59:8-9).

Whether a claimant establishes extraordinary circumstances permitting the late filing of a notice of claim presents an "entirely distinct" issue from the determination of the claim's accrual date. Beauchamp, 164 N.J. at 119. In the analysis of whether extraordinary circumstances prevented the timely filing of a notice of claim, "the court's focus must be directed to the evidence that relates to [the claimant's] circumstances as they were during the ninety-day time period, because that is the time during which the notice should have been filed." D.D., 213 N.J. at 151. Stated differently, where a claimant seeks leave to file a late notice claim, he or she must demonstrate that during the ninety-day period following the accrual date, extraordinary circumstances prevented the filing of a timely notice of claim. Ibid.

The TCA does not define what constitutes "extraordinary circumstances," leaving "for a case-by-case determination . . . whether the reasons given rise to the level of 'extraordinary' on the facts presented." Lowe, 158 N.J. at 626 (citations and internal quotations omitted). Moreover, "[i]n determining whether extraordinary circumstances exist, 'a judge must consider the collective impact of the circumstances offered as reasons for the delay.'" Mendez v. S. Jersey Transp. Auth., 416 N.J. Super. 525, 533 (App. Div. 2010) (quoting R.L.

v. State-Operated Sch. Dist., 387 N.J. Super. 331, 341 (App. Div. 2006)). This requires a "fact-sensitive analysis." McDade, 208 N.J. at 478.

For example, in D.D., the Court rejected a claimant's reliance on her medical condition as an extraordinary circumstance where she failed to demonstrate the condition was sufficiently "severe, debilitating, or uncommon" to have prevented her filing a timely notice of claim. 213 N.J. at 149-50. Similarly, in Blank v. City of Elizabeth, the Court found an absence of extraordinary circumstances where "an inspection of the area within a reasonable time following the accident would have led promptly to the identification of the public entity defendants." 162 N.J. 150, 152-53 (1999). In Leidy v. County of Ocean, we held that extraordinary circumstances did not exist where "the record [was] barren of any reasonable efforts undertaken by plaintiff during the ninety-day period to ascertain ownership, control or operation" of the property at issue. 398 N.J. Super. 449, 461 (App. Div. 2008).

Even where extraordinary circumstances are demonstrated, a late notice of claim is not permitted where the public entity will be substantially prejudiced. N.J.S.A. 59:8-9. However, "it is the public entity that has the burden of coming forward and of persuasion on the question of [substantial] prejudice." Blank v. City of Elizabeth, 318 N.J. Super. 106, 114 (App. Div. 1999). "The fact of delay

12

alone does not give rise to the assumption of prejudice; the public entity must present a factual basis for the claim of substantial prejudice." Mendez, 416 N.J. Super. at 535-36 (citing Kleinke v. City of Ocean City, 147 N.J. Super. 575, 581 (App. Div. 1977)).

"Findings about 'the lack of "substantial prejudice" and the presence of "extraordinary circumstances" . . . must be expressly made [by a motion court] in order to comply with the legislative mandate and to justify the entry of an order permitting the filing of a late notice of claim under N.J.S.A. 59:8-9.'" Leidy, 398 N.J. Super. at 456-57 (first alteration in original) (quoting Allen v. Krause, 306 N.J. Super. 448, 455-56 (App. Div. 1997)). Moreover, such findings are required under Rule 1:7-4(a) and Rule 1:6-2(f). A "[f]ailure to perform that duty 'constitutes a disservice to the litigants, the attorneys[,] and the appellate court.'" Curtis v. Finneran, 83 N.J. 563, 569-70 (1980) (quoting Kenwood Assocs. v. Bd. of Adj. of Englewood, 141 N.J. Super. 1, 4 (App. Div. 1976)).

Applying the foregoing principles, we employ two standards of review to our analysis of the court's order. We review a court's determination of the accrual date of a tort claim de novo. See Jones, 230 N.J. at 153 (noting in the

A-0465-20

absence of disputed facts, reviewing courts do not defer to a motion court's legal determinations).

We also conduct a de novo review of a court's interpretation and application of the TCA to undisputed facts. Ibid. However, where a court fails to make findings of fact and conclusions of law supporting its decision, the de novo standard of review does not require that we "decide the motion tabula rasa." Est. of Doerfler v. Fed. Ins. Co., 454 N.J. Super. 298, 302 (App. Div. 2018). Under that circumstance, it is appropriate to remand for the motion court to decide the motion and render the requisite findings of fact and conclusions of law in the first instance. Ibid.

We review a decision granting or denying a motion for leave to file a late notice of claim under the TCA for an abuse of discretion. O'Donnell, 236 N.J. at 344. We apply the same standard of review to a court's determination there are extraordinary circumstances permitting the late filing of a notice of claim for an abuse of discretion. Jeffrey v. State, 468 N.J. Super. 52, 58-59 (App. Div. 2021). "[A]n abuse of discretion 'arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" State v. R.Y., 242 N.J. 48, 65 (2020) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

Here, the motion court erred by failing to undertake the first step in the analysis required to determine if Lopez is entitled to file a late notice of claim. See Beauchamp, 164 N.J. at 118. The court did not determine the accrual date of Lopez's malpractice claim against University Hospital and Dr. Shahidi. See ibid.; see also Ben Elazar, 230 N.J. at 133-34. Instead, the court more generally stated that because Lopez was first in HUMC until the end of April 2019, and then in Regent Care Center until the end of August or beginning of September, his claim could not have accrued before then.

The court's general conclusion is untethered to any findings of fact based on the evidence presented as to why the claim did not accrue on April 11, 2019, when Lopez learned at HUMC that he had a lesion on his spine requiring immediate emergency surgery that clearly was not diagnosed the day before when he allegedly saw Dr. Shahidi at University Hospital and was sent home with a diagnosis only of back pain. See Beauchamp, 164 N.J. at 123 (explaining a claim generally accrues "on the date of the accident or incident that gives rise to any injury"). The court also did not engage in any analysis or make any findings supporting application of the discovery rule to toll the running of the ninety-day period for the filing of a timely notice of claim. For example, the court did not consider or decide whether Lopez presented evidence establishing

A-0465-20

that he suffered from the type of severe, debilitating, or uncommon injury that rendered him unable to file a notice of claim, thereby tolling the ninety-day period for that reason. See generally D.D., 213 N.J. at 149-50.

In fact, Lopez's submissions to the court suggest a number of issues and events that may have affected the accrual of his claim. Lopez relied on his hospitalization at HUMC and subsequent stay at Regent Care Center, and the difficulty in obtaining and reviewing thousands of pages of medical records from many different hospitals, as reasons supporting a tolling of the ninety-day period under the discovery rule. He generally contends that for those reasons, he was unable to determine if he had a claim against University Hospital and Dr. Shahidi, but he does not identify the accrual date for his claim. The motion court did not address, consider, or decide the issues pertinent to a determination of the accrual date, and, as noted, did not make findings of fact and conclusions of law concerning the actual accrual date of the claim.

As we have explained, defining the accrual date is essential to determining if there were extraordinary circumstances permitting the filing of a late notice of claim. See Beauchamp, 164 N.J. at 119. A claimant must show there were exceptional circumstances during the ninety-day period that begins on the accrual date to warrant leave to file a late notice of claim. Id. at 118-19. Again,

a failure to determine the accrual date renders it impossible to correctly decide whether there were extraordinary circumstances extant during the relevant ninety-day period of time.

Moreover, although the court made a conclusory finding there were exceptional circumstances permitting the filing of a late notice of claim, the court did not make the requisite findings as to what they were and when they were extant. See Leidy, 398 N.J. Super. at 456-57. Indeed, it appears the court erred by not recognizing that determinations of the accrual date and whether exceptional circumstances are extant constitute different decisions requiring application of different standards. Beauchamp, 164 N.J. at 119. That is, we interpret the court's decision as suggesting Lopez's period of hospitalization and rehabilitation following his emergency surgery served both as a basis for the tolling the accrual date under the discovery rule, and as exceptional circumstances justifying the late filing of a notice of claim during the ninety days following the accrual of his claim. For the reasons we have explained, such a finding is inconsistent with the applicable legal principles and ignores the difference between the accrual date and exceptional circumstances standards. See ibid.

A-0465-20

In any event, because the court did not determine the accrual date and therefore could not properly assess whether there were exceptional circumstances during the relevant ninety-day period, and did not make the requisite findings of fact supporting its decision, we vacate the court's order and remand for further proceedings. On remand, the court shall conduct such proceedings, and allow such filings by the parties, as it deems necessary to first determine the accrual date of Lopez's claim. Lopez has the burden of proving the accrual date. See The Palisades at Ft. Lee Condo. Ass'n v. 100 Old Palisade, LLC, 230 N.J. 427, 454 (2017); see also Lopez v. Sawyer, 62 N.J. 267, 275-76 (1973). The court shall support its decision concerning the accrual date with the requisite findings of fact and conclusions of law. See R. 1:6-2(f) and R. 1:7-4(a).

The court shall also complete the requisite analysis to determine if there were extraordinary circumstances permitting the filing of a late notice of claim under the standard set forth in N.J.S.A. 59:8-9. Again, the court's determination shall be supported by findings of fact and conclusions of law.

If the court determines either that Lopez filed his notice of claim within ninety-days of the claim's accrual date or that he was entitled to file a late notice of claim under N.J.S.A. 59:8-9, the matter shall then proceed in the normal

course. If the court determines Lopez did not file a notice of claim within ninety-days of the claim's accrual date, and he was not entitled to file a late notice of claim under N.J.S.A. 59:8-9 as to University Hospital and Dr. Shahidi, it shall enter an order dismissing Lopez's claim against them.

Our vacation of the court's order and remand for further proceedings shall not be construed as an opinion on the accrual date of Lopez's claim or the merits of his motion for leave to file a late notice of claim. The accrual date issue and Lopez's motion for leave to file a late notice of claim shall be decided by the court based on the record and proceedings on remand in accordance with the standards under the TCA.

Vacated and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0465-20