**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1619-22

AHMAAD GRIFFIN, Administrator
Ad Prosequendum of the Estate of
GREGORY GRIFFIN, and AHMAAD
GRIFFIN, Administrator of the
Estate of GREGORY GRIFFIN,

     Plaintiff-Respondent,

v.

THE CITY OF NEWARK, NEWARK
POLICE DEPARTMENT,
P.O. JOVANNY CRESPO, and
P.O. HECTOR ORTIZ,

     Defendants-Appellants.

_____

Argued March 11, 2024 – Decided February 14, 2025

Before Judges Gilson, DeAlmeida, and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-6600-19.

Emilia Perez, Assistant Corporation Counsel, argued the cause for appellants (Kenyatta K. Stewart,

Corporation Counsel, attorneys; Emilia Perez, on the briefs).

Michael A. Rabasca argued the cause for respondent (The Epstein Law Firm, PA, attorneys; Michael J. Epstein, of counsel and on the brief; Michael A. Rabasca, on the brief).

The opinion of the court was delivered by

DeALMEIDA, J.A.D.

This matter returns to us following a limited remand to the Law Division from the Supreme Court. Defendant City of Newark appeals from the January 13, 2023 order of the Law Division deeming a notice of claim filed with the City pursuant to the Tort Claims Act (TCA), N.J.S.A. 59:8-1 to 8-11, by an attorney acting on behalf of the estate and heirs of decedent Gregory Griffin to have been timely filed. We reverse.

## I.

On January 28, 2019, defendant Newark police officer Jovanny Crespo fatally shot decedent during a car chase. The incident began when decedent and his passenger, Andrew J. Dixon, fled a motor vehicle stop by another officer. Their car was pursued by a number of officers through the streets of Newark. During the chase, Crespo exited his police cruiser three times and shot into decedent's moving vehicle, ultimately striking both decedent and Dixon. The

two injured men were transported to a trauma center for medical treatment. Police recovered a loaded, semi-automatic handgun from Griffin's car.

On January 29, 2019, decedent succumbed to his injuries. He died intestate, survived by four children. Two of decedent's surviving children were adults: daughter Ragiah Harrington and son plaintiff Ahmaad Griffin. His two remaining children were minor daughters. Decedent was also survived by his father Alphonso Whitaker. Dixon survived the shooting.

In early February 2019, Whitaker contacted Patrick M. Rogan, an attorney who was not licensed to practice law in New Jersey, to pursue legal claims on behalf of decedent's estate and heirs against the City and the officers involved in the shooting. Although Whitaker had no authority to act on behalf of the estate and heirs, he was in contact with decedent's adult children and the mothers of decedent's minor daughters.

According to his certification, Rogan conducted an Internet search that revealed the above-described details of the shooting and decedent's death, except for Crespo's name. In addition, Rogan's research uncovered a statement by the Acting Essex County Prosecutor that his office was "actively investigating" the shooting, was "tak[ing] the . . . matter seriously[,]" as it does in "all cases involving the use of force[,]" and would be "reviewing the evidence carefully"

3

and "present[ing] the case to the" grand jury, as required by the Attorney General's guidelines.

Rogan did not seek further information from any other source, including defendant Newark Police Department (NPD) or the county prosecutor's office. According to Rogan, he was "aware through [his] years of practice that neither [of those entities] would release any pertinent information or materials related to the incident while the investigation was open and ongoing."

On February 15, 2019, Rogan told Whitaker there was "no factual or legal basis to conclude or even allege that" the City or any of its officers acted improperly or wrongfully. Rogan did not file a notice of claim with the City concerning decedent's death.

On February 26, 2019, the Newark Public Safety Director Anthony F. Ambrose announced the City "ha[d] concerns about [the] shooting and [would] cooperate fully with" the prosecutor's investigation. Ambrose also announced the officer who shot decedent had been suspended "in the best interest of our community members." He did not name Crespo.

Also on February 26, 2019, the Acting County Prosecutor issued a press release stating the "investigation [was] active and ongoing" and "the evidence gathered, so far, raises serious questions about the officer's conduct." At the

4

time, all body and dashboard camera video recordings of the incident were in the possession of the prosecutor's office and had not been publicly released.

Whitaker met with Rogan on the day the City announced the officer's suspension. The two men spoke on the phone with one of decedent's adult children and representatives of his three other children, all of whom agreed to pursue "any and all available claims and remedies" arising out of the shooting and decedent's death. The heirs agreed to retain Rogan to represent decedent's estate to file legal claims against the City and its officers.

Plaintiff, Harrington, and the mother of one of decedent's minor daughters executed retainer agreements with Rogan. The dates of the agreements are not specified in the record. They agreed that either plaintiff or Whitaker should be appointed Administrator and Administrator Ad Prosequendum of decedent's estate. The mother of decedent's other minor daughter did not execute a retainer agreement with Rogan because he was not experienced in pursuing personal injury claims, was not admitted to practice law in New Jersey, and, according to her, asked her to sign a retainer agreement with a contingent fee in excess of that permitted by New Jersey law.

On May 21, 2019, a grand jury indicted Crespo on charges of aggravated manslaughter, N.J.S.A. 2C:11-4(a), aggravated assault, N.J.S.A. 2C:12-1(b),

possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a), and official misconduct, N.J.S.A. 2C:30-2, for his role in the shooting. The prosecutor's office released the video recordings of the incident the same day. The Acting County Prosecutor stated at a news conference that it "is the State's position that [Crespo's] conduct that night was criminal," and he "showed a reckless disregard for human life by shooting into a moving vehicle . . . which had heavily tinted windows."

According to Rogan, it was only after the announcement Crespo had been indicted that it became apparent to him decedent's estate and heirs had viable claims against the City, Crespo, and the other officers involved in the shooting. Rogan informed Whitaker that "time was now of the essence" to have someone appointed as Administrator of the estate and to file a notice of claim.

On May 23, 2019, Rogan filed a notice of claim with the City's Department of Law, its Office of Public Safety, and the Office of the Attorney General. The notice of claim states that it was filed on behalf of decedent's estate and heirs "c/o Mr. Alphonso Whitaker" and names Crespo, defendant Newark Police Officer Hector Ortiz, the City, and NPD as responsible for decedent's death. The notice of claim was filed 115 days after the shooting, 114 days after decedent's death, eighty-seven days after the City announced the

suspension of the officer involved in the shooting, and two days after Crespo was indicted.[1]

The following day, Rogan received a letter from an attorney representing the City advising the "notice of claim was not timely filed within [ninety] days of the incident." The City took the position the ninety-day period for filing a notice of claim set forth in N.J.S.A. 59:8-8 expired, at the latest, on April 29, 2019, ninety days after decedent's death. Rogan did not respond to the letter.

On May 31, 2019, plaintiff, with the consent of Harrington and the mother of one of decedent's minor daughters, retained a new attorney to obtain plaintiff's appointment as Administrator and Administrator Ad Prosequendum of decedent's estate and to pursue claims against the public entities and officers allegedly responsible for his death.

On June 26, 2019, the new attorney filed a complaint and order to show cause in the Chancery Division seeking plaintiff's appointment as Administrator and Administrator Ad Prosequendum of decedent's estate. The mother of decedent's other minor daughter filed a competing application to be appointed Administrator. She argued that because no one had been appointed

---

[1] The notice of claim does not indicate that one of Griffin's heirs did not retain Rogan as counsel, nor does it state that an Administrator had not yet been appointed for decedent's estate.

A-1619-22

Administrator of decedent's estate, Rogan was not authorized to file the May 23, 2019 notice of claim.

On August 9, 2019, the Chancery Division entered an order naming plaintiff as Administrator and Administrator Ad Prosequendum for the estate.

On September 9, 2019, plaintiff filed a motion in the Law Division for an order deeming the May 23, 2019 notice of claim to have been timely filed. Plaintiff argued that although he, the other heirs, and Whitaker knew shortly after the incident of decedent's death and the involvement of police officers employed by the City, they did not have sufficient information to allege wrongdoing, and therefore the claims of the estate and heirs did not accrue until the May 21, 2019 announcement of Crespo's indictment. In addition, plaintiff argued if the court disagreed with that position, the claims of the estate and heirs accrued at the earliest on February 26, 2019, when the City announced the suspension of an unnamed officer, eighty-seven days prior to the filing of the notice of claim.

Alternatively, plaintiff argued if the claims of the estate and heirs arose prior to February 22, 2019,[2] the court should grant him leave pursuant to N.J.S.A. 59:8-9 to file a late notice of claim because of a lack of prejudice to the

_____

[2] February 22, 2019 is ninety days prior to May 23, 2019.

8

defendants and extraordinary circumstance that caused the failure to file a timely notice. He argued the City and its employees would not be prejudiced by a late notice of claim because the claims of decedent's minor survivors have not yet accrued, see N.J.S.A. 59:8-8 ("[n]othing in this section shall prohibit a minor . . . from commencing an action under this act . . . after reaching majority . . . ."), and because the estate and heirs could assert State and federal constitutional and statutory claims not subject to the TCA's notice provisions. See Owens v. Feigin, 194 N.J. 607, 609 (2008) (TCA's notice-of-claim provisions do not apply to claims asserted under the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2); Schneider v. Simonini, 163 N.J. 336, 372 (2000) (TCA's notice-of-claim provisions are inapplicable to civil rights actions under 42 U.S.C. § 1983). He argued the extraordinary circumstances standard was satisfied because no one had authority to file a notice of claim on behalf of the estate until his appointment to the Administrator positions.

The City opposed the motion, arguing the claims of the estate and heirs accrued on January 28, 2019, the day of the shooting or, at the latest, on January 29, 2019, the day decedent died. The City argued plaintiff, the other heirs, and Whitaker had sufficient information to file a notice of claim prior to the expiration of the ninety-day period or could have obtained sufficient information

by conducting a further investigation, filing a public records request with the City, or interviewing Dixon, who was hospitalized after the shooting.[3]

In addition, the City argued leave to file a late notice of claim was not warranted because, although the City concedes it would not be prejudiced by a late notice of claim, plaintiff cannot establish extraordinary circumstances justifying such relief. The City characterized the late filing as the consequence of Rogan's inadvertence or misunderstanding of the law, given that he confused the estate and heirs' ability to prove a claim against the City and its employees with their knowledge that decedent's death was caused by City employees. Finally, the City argued plaintiff failed to file the motion for leave to file a late notice of claim within a reasonable time after his appointment as Administrator.

On October 25, 2019, the trial court issued an oral decision granting plaintiff's motion. The trial court made no findings with respect to the date on which the claims of decedent's estate and heirs accrued. The court's findings of fact and conclusions of law, however, suggested it granted plaintiff leave to file a late notice of claim pursuant to N.J.S.A. 59:8-9:

> [I]f there ever was a case that says extraordinary circumstances, this is it based just only on the dates involved and the fact that certain information was not

---

[3] Dixon was later indicted and charged with several offenses arising from the police chase.

being released. It was obviously an ongoing investigation.

. . . .

And I think that in fact . . . the estate was at the appointment of an administrator who could legally proceed with the matter . . . on August 9th. The motion here was made a month later, on September 9th. I[] think that's a reasonable time based upon the circumstances.

Also with regard to the other, and minimal information that was released by the Prosecutor's Office, given the fact that this was an ongoing and continuing . . . investigation . . . this is an extraordinary circumstance simply upon the way the facts of this case developed. And that being the case[,] I'm going to deem that the notice, the notice was timely filed . . . .

The October 25, 2019 order granting the motion, on the other hand, suggested the trial court concluded plaintiff had filed the notice of claim within ninety days of the accrual of the estate's claims. The order states that it is "ORDERED that the Notice of Claim filed on May 23, 2019 on behalf of the heirs and estate of decedent . . . is hereby deemed timely filed . . . ." The court struck out the following paragraph of the order: "ORDERED that plaintiff's alternative application for leave to file a Notice of Claim out of time pursuant to N.J.S.A. 59:8-9 is hereby GRANTED."

11

The City appealed.  Before us, the parties expressed different views of the basis of the trial court's decision.  The City argued the court granted plaintiff leave to file a late notice of claim based on an erroneous finding of extraordinary circumstances.  Plaintiff argued the trial court found the claims of decedent's estate and heirs did not accrue until the announcement of Crespo's indictment, rendering the notice of claim timely.  Griffin v. City of Newark, No. A-1100-19 (App. Div. Jan. 12, 2021) (slip op. at 11).

In reviewing the trial court's decision, we applied the well-established principle that "[a]scertaining the timeliness of a [TCA] notice requires a simple, three-step sequential analysis that never changes."  McNellis-Wallace v. Hoffman, 464 N.J. Super. 409, 416 (App. Div. 2020) (citing Beauchamp v. Amedio, 164 N.J. 111, 118 (2000)).  "The first step is to determine when the cause of action accrued in accordance with N.J.S.A. 59:8-1."  Ibid.  "The discovery rule is part and parcel of such an inquiry because it can toll the date of accrual."  Ibid. (quoting Beauchamp, 164 N.J. at 118).  "Once the date of accrual is ascertained, one can proceed to the second step, which 'is to determine whether a notice of claim was filed within ninety days' as required by N.J.S.A. 59:8-8."  Ibid.  "'If not, the third task is to decide whether extraordinary

12

circumstances exist justifying a late notice' under N.J.S.A. 59:8-9." Ibid. (quoting Beauchamp, 164 N.J. at 118-19). Griffin, slip op. at 14.

The City argued the claims of decedent's estate and heirs accrued on the date of the shooting or the day decedent died. Id. at 15. According to the City, plaintiff, the other heirs, and Whitaker were immediately aware of Griffin's gunshot injury and death, that the injury and death were caused by a police officer's discharge of his firearm during a car chase, and that the officer was employed by the City. Ibid. The City noted that shortly after the shooting, plaintiff had knowledge of all of the information that ultimately was included in the May 23, 2019 notice of claim, apart from Crespo's name and the existence of the indictment, neither of which was necessary to submit a sufficient notice of claim. Id. at 15-16.

Plaintiff argued the claims accrued on the day the Acting Prosecutor announced Crespo's indictment. Id. at 16. According to plaintiff, until then "it was not apparent that [Griffin's] heirs and estate had viable claims against defendants" because "no specific explanation or reason for the officer's suspension was provided, the facts and circumstances of [Griffin's] death were still unknown and unavailable, and the identity of the officer(s) involved . . . were still unknown." Ibid. Alternatively, plaintiff argued the claims accrued at

13

the earliest on February 26, 2019, when the City announced the suspension of the officer who shot Griffin because prior to that date, the limited information publicly reported provided no basis to believe the City or its employees had engaged in any wrongdoing. Ibid.

We agreed with the City, concluding the claims of decedent's estate and heirs accrued at the latest on January 29, 2019, the day decedent died. Id. at 16-17. We found that as of that date, decedent's heirs were aware of his death from a gunshot wound inflicted by one or more Newark police officers during a car chase. Id. at 17. We concluded, "[t]his was sufficient information to file a notice of claim alerting the City to the potential claims of the estate and its heirs." Ibid. We rejected plaintiff's argument the accrual of the claims was tolled by the discovery rule until either the announcement that an officer was suspended or the announcement Crespo had been indicted. Id. at 17-19.

We proceeded to the second step established in Beauchamp and found: "Ninety days from January 29, 2019 was April 29, 2019. We conclude, therefore, that the May 23, 2019 notice of claim was filed after expiration of the ninety-day statutory period. The trial court erred to the extent that it determined that the notice of claim was timely filed." Id. at 20.

14

We turned to whether leave to file a late notice of claim on behalf of decedent's estate and heirs was warranted. We concluded it was not. We found:

> From January 29, 2019, when the claims of the estate and heirs accrued, to April 29, 2019, when the statutory ninety-day period expired, no impediment existed to plaintiff, Griffin's other heirs, or Whitaker filing a notice of claim informing the City that Griffin's estate and heirs might file tort claims arising from the shooting. While it is true that no one had been appointed to the Administrator positions for the estate, such an appointment is not necessary to file a protective notice of claim on behalf of the estate.
>
> . . . .
>
> [P]laintiff could have filed a timely notice of claim on behalf of the estate and heirs and sought retroactive validation of the notice once appointed to the Administrator positions.
>
> [Id. at 22-23.]

We rejected Rogan's mistaken interpretation of New Jersey law as a basis of a finding of extraordinary circumstances. Id. at 23-24. We also found inapplicable the precedents issued in the few instances in which extraordinary circumstances were found to warrant the filing of a late notice of claim. Id. at 24-25 (distinguishing Mendez v. S. Jersey Transp. Auth., 416 N.J. Super. 525, 534 (App. Div. 2010) (finding extraordinary circumstances where a videotape depicting the involvement of a municipal ambulance in a motor vehicle accident

15

that injured plaintiff was withheld by a public highway authority until after expiration of the ninety-day notice period), Lowe v. Zarghami, 158 N.J. 606, 629 (1999) (finding extraordinary circumstances where a physician employed by a public entity allegedly committed medical malpractice during surgery on plaintiff at a private hospital, obscuring his public employment), Ventola v. N.J. Veterans' Mem'l Home, 164 N.J. 74, 82 (2000) (finding extraordinary circumstance where plaintiff was under the mistaken impression that a veterans' residential care facility was operated by the federal government), and Beauchamp, 164 N.J. at 122-23 (finding extraordinary circumstances where failure to file a timely notice of claim was attributable to an attorney's reasonable reliance on precedent from this court that arguably supported his interpretation of the TCA's notice requirement)).

Notably, we also found the holding in O'Donnell v. N.J. Turnpike Auth., 236 N.J. 335, 350-52 (2019), did not support a finding of extraordinary circumstances. Id. at 25. We concluded the two factors the O'Donnell Court found to be a "rare case" of extraordinary circumstances were not present here because plaintiff did not prepare a timely notice of claim naming the City that he filed with the wrong public entity while another claimant filed a timely notice

16

of claim with the City arising from the same incident and naming plaintiff as an injured party.  Id. at 25.

Having determined plaintiff did not establish extraordinary circumstances warranting leave to file a late notice of claim, we reversed the trial court order. Id. at 26.

On February 1, 2021, plaintiff filed a petition for certification with the Supreme Court.  On April 29, 2021, plaintiff moved before the Court to supplement the record with a notice of tort claim filed on April 9, 2019, on behalf of Dixon, the passenger in decedent's car.  Plaintiff became aware of Dixon's notice of claim when, in April 2021, he was served with papers in a federal court action filed by Dixon's estate arising from the shooting.[4]  Dixon's estate named decedent's estate as a defendant in that action.

Dixon's notice of claim states that on January 28, 2019, at approximately 11:30 p.m., "[c]laimant was a passenger in a vehicle.  Their vehicle was being chased by the Newark police.  Claimant was shot in the face-mouth by a police officer."  The notice identifies the intersection in Newark at which the shooting took place and names the State, Newark, NPD, and Essex County as the entities that he claimed were at fault for his injuries.  Dixon's notice of claim does not

---

[4]  Dixon was killed in 2021 in an accident unrelated to the shooting.

17

mention Griffin or set forth a specific theory of liability. Plaintiff argued Dixon's notice of claim is vital to the extraordinary circumstances analysis under O'Donnell.

On July 6, 2021, the Court granted plaintiff's motion to supplement the record.

On October 21, 2022, the Court issued an order stating:

> It is ORDERED that the petition for certification is granted, and the matter is summarily remanded to the trial court for consideration of extraordinary circumstances in light of Pamela O'Donnell v. New Jersey Turnpike Authority, 236 N.J. 335 (2019) and the expanded record that includes the Notice of Claim for Damages filed on behalf of Andrew James Dixon by letter dated April 9, 2019. Jurisdiction is not retained.
>
> [Griffin v. City of Newark, 252 N.J. 191, 192 (2002).]

On January 13, 2023, the trial court issued an oral decision. Although the Supreme Court's remand order is limited to a consideration of extraordinary circumstances in light of O'Donnell and the expanded record, the trial court revisited the issue of the accrual date of the claims of decedent's estate and heirs. The trial court stated that while it "appreciate[d] the Appellate Division's reversal" of its finding as to the accrual date, it "respectfully disagee[d] with the Appellate Division's . . . finding that . . . sufficient information was available to the . . . Estate of Griffin within the [ninety] days. I don't agree with that."

Although the Supreme Court had not reversed our conclusion that the claims of the decedent's estate and heirs accrued on January 29, 2021, or our holding rejecting application of the discovery rule, the trial court found that "the discovery rule applies in this particular matter . . . ." Applying the discovery rule, the trial court found the claims accrued on February 26, 2019, when NPD announced an officer involved in the shooting had been suspended and the prosecutor's office announced its investigation raised "serious concerns" about the officer's behavior. As a result, the court found the May 23, 2019 notice of claim was timely filed eighty-seven days after the claims accrued.

In the alternative, the court found the totality of the circumstances justified granting leave to file a late notice of claim. The court did not identify the accrual date on which it based its extraordinary circumstances analysis (the February 26, 2019 accrual date found by the trial court would not require an extraordinary circumstances analysis). We assume the court based its analysis on the January 29, 2019 accrual date we previously found.

The court found extraordinary circumstances existed based on: (1) "the delay of the release of critical information regarding the chase and shooting"; (2) "plaintiff[] had diligently, promptly contacted and retained counsel to pursue all available claims and remedies"; and (3) "the decedent's heirs engaged in [a]

A-1619-22

protracted dispute regarding the appointment of . . . administrators or administrator ad prosequendum of the decedent's [e]state and retention of counsel, which prevented anyone taking action on behalf of the [e]state."  In our prior opinion, we considered and rejected each of these bases as supporting a finding of extraordinary circumstances.  Griffin, slip op. at 22-26.

The trial court's decision did not discuss whether O'Donnell requires a finding of extraordinary circumstances in light of the Supreme Court's expansion of the record to include Dixon's notice of claim.

A January 13, 2023 order deems the May 23, 2019 notice of claim timely filed and, in the alternative, grants plaintiff's application to file a late notice of claim pursuant to N.J.S.A. 59:8-9.

This appeal follows.  The City argues the trial court exceeded the Supreme Court's remand order and allowed plaintiff to relitigate the accrual date, reargue that the discovery rule tolled the accrual date of the claims of decedent's estate and heirs and, in the alternative, to establish extraordinary circumstances based on facts other than whether O'Donnell requires a finding of extraordinary circumstances in light of Dixon's timely notice of claim.  In addition, the City argues:  (1) the trial court's finding of extraordinary circumstances is not supported by the record; (2) the trial court failed to address whether plaintiff's

motion for leave to file a late notice of claim was filed in a reasonable time; (3) plaintiff's notice of claim was not subject to equitable tolling; and (4) plaintiff did not substantially comply with the notice provisions of the TCA.

II.

We agree that the trial court failed to follow the Supreme Court's remand order. Justice Brennan long ago expressed the well-established principle that a trial judge "is under a peremptory duty to obey in the particular case the mandate of the appellate court precisely as it is written." Flanigan v. McFeely, 20 N.J. 414, 420 (1956) (citing In re Plainfield-Union Water Co., 14 N.J. 296, 303 (1954); McGarry v. Central R. Co. of N.J., 107 N.J.L. 382 (E. & A. 1931); Hellstern v. Smelowitz, 17 N.J. Super. 366, 371 (App. Div. 1952); Jewett v. Dringer, 31 N.J. Eq. 586 (Ch. 1879)); see also Park Crest Cleaners, LLC v. A Plus Cleaners & Alterations Corp., 458 N.J. Super. 465, 472 (App. Div. 2019).

The Supreme Court's mandate here could not have been clearer. The matter was remanded for "consideration of extraordinary circumstances in light of Pamela O'Donnell v. New Jersey Turnpike Authority, 236 N.J. 335 (2019) and the expanded record that includes the Notice of Claim for Damages filed on behalf of Andrew James Dixon by letter dated April 9, 2019." Griffin, 252 N.J. at 192. The Court did not reverse or vacate our conclusion that the claims of

21

decedent's estate and heirs accrued on January 29, 2019, or our rejection of plaintiff's argument that the discovery rule warranted recognition of a later accrual date. It was, therefore, error for the trial court to revisit those issues and reconsider plaintiff's arguments with respect to the accrual date and the discovery rule. Analysis of whether extraordinary circumstances exist should have been undertaken based on a January 29, 2019 accrual date and the untimely filing of plaintiff's May 23, 2019 notice of claim.

The trial court's consideration of extraordinary circumstances also deviated from the Supreme Court's mandate. The Court directed the trial court to consider extraordinary circumstances in light of O'Donnell and the expanded record including Dixon's timely notice of claim. The trial court's decision, however, provides no analysis of the holding in O'Donnell as it relates to the timely filing of Dixon's notice of claim. Instead, the trial court revisited three factors we previously found not to constitute extraordinary circumstances: the delay of the release of information by the NPD and prosecutor's office; plaintiff's retention of out-of-State counsel who misconstrued New Jersey law; and the dispute over appointment of an administrator of decedent's estate.

Rather than remand for the trial court to fulfill the Supreme Court's mandate, we will determine whether, in light of the holding in O'Donnell, the

22

filing of Dixon's timely notice of claim constitutes extraordinary circumstances warranting leave for plaintiff to file his untimely notice of claim.

In O'Donnell, Timothy O'Donnell and his five-year-old child were killed in a motor vehicle collision on the New Jersey Turnpike. 236 N.J. at 339-40. The plaintiff, Pamela O'Donnell, who was Timothy's widow and the child's mother, hired an attorney to sue the other drivers involved and the New Jersey Turnpike Authority (NJTA).[5] Id. at 340. The attorney completed a notice of claim that set forth the details of the accident, noted the accident took place on the Turnpike, named NJTA as a responsible party, and listed NJTA's address. Ibid. The notice alleged NJTA's negligence caused the two deaths because Timothy's vehicle would not have propelled to the opposite side of the highway during the accident, where it collided head-on with an ambulance travelling in the opposite direction, had NJTA installed safety barriers to separate opposing lanes of traffic. Id. at 339-40.

Within ninety days of the accident, Pamela's attorney filed the notice of claim with the Bureau of Risk Management of the State of New Jersey (Bureau), but not with NJTA, as required by the TCA. Id. at 340. The Bureau did not

---

[5] Because they share a surname, we refer to the O'Donnells by their first names. We intend no disrespect.

forward the notice of claim to NJTA. Id. at 341. Pamela retained a new attorney who filed an amended notice of claim with NJTA 197 days after the accident. Id. at 340.

Two days later, Pamela filed a complaint in the Law Division against NJTA seeking damages under the Wrongful Death Act, N.J.S.A. 2A:31-1 to -6, the Survival Act, N.J.S.A. 2A:15-3, and Green v. Bittner, 85 N.J. 1, 15-20 (1980) (extending scope of recovery in actions for the wrongful death of a child). Ibid.

NJTA moved to dismiss the complaint, contending Pamela failed to file a notice of claim within ninety days of the accident. Id. at 341. Pamela opposed the motion and cross-moved for leave to file a late notice of claim pursuant to N.J.S.A. 59:8-9. Ibid. The trial court denied the motion to dismiss and granted Pamela's cross-motion. Ibid. The court found extraordinary circumstances warranted granting leave to file Pamela's late notice of claim because the Bureau did not forward her notice of claim to NJTA or notify Pamela that the notice had been filed with the wrong agency. Ibid. In addition, the trial court determined Pamela should not be penalized for her attorney's negligence in filing the notice of claim with the wrong entity. Ibid.

We reversed. Id. at 342. We concluded there were no obstacles preventing Pamela's first attorney from identifying NJTA as the proper entity

with which to file the notice of claim and her second attorney's prompt remedial actions were insufficient to constitute extraordinary circumstances. Ibid. We noted as well that NJTA did nothing to impede timely filing of the notice and the Bureau had no obligation to forward the wrongly filed notice to NJTA. Ibid.

Pamela filed a petition for certification. Ibid. She also moved before the Supreme Court to expand the record to include a timely notice of claim filed with NJTA by Eliasar Morales, the ambulance driver. Ibid. Morales's timely notice described the accident, noted that it took place on the Turnpike, contained an allegation that NJTA failed to install roadway safety barriers preventing vehicles from crossing onto the opposite side of the Turnpike and into oncoming lanes of traffic and attached a corresponding police report describing the incident. Id. at 342-43. The Court granted both the petition for certification and the motion to expand the record. Id. at 342.

The Court began its analysis of whether extraordinary circumstances existed with a review of the "unique facts and circumstances" before it. Id. at 349. The court emphasized Pamela's timely preparation and filing of a detailed notice of claim:

> Within ninety days of the accident – the date when the cause of action accrued – [Pamela's] attorney served her otherwise sufficient notice on the State, rather than the NJTA.

. . . .

Importantly, it is apparent that [Pamela] did not sit on her rights. Well within ninety days of the accident that killed her husband and daughter, [Pamela] diligently sought to pursue her claims against the NJTA and retained an attorney to guide her through the process. The attorney prepared a notice of claim that adequately described the date, location, and circumstances surrounding the fatal three-vehicle accident. The notice listed the NJTA as the responsible agency and alleged that the NJTA's failure to install safety barriers preventing vehicles from crossing into oncoming traffic caused the tragic deaths of her husband and daughter.

[Id. at 350.]

In addition, the Court relied on the timely notice of claim filed with NJTA

by Morales:

Although the NJTA did not receive [Pamela's] notice of claim within the ninety-day window, the NJTA timely received a nearly identical notice of claim from Morales, the ambulance driver involved in the fatal three-car collision. Morales served a detailed notice of claim on the NJTA on the same day [Pamela's] attorney served her notice of claim on the State. Morales's notice apprised the NJTA of the collision's date, location, and pertinent details. It listed the NJTA as the responsible public entity and included as its theory of liability against the NJTA that it should have installed safety barriers to prevent vehicles from crossing into oncoming traffic. Importantly, Morales attached the police report to his notice of claim, which explicitly named Timothy and [his child] and indicated that they died in the collision.

26

[Id. at 350-51 (footnote omitted).]

The Court "[a]nalyz[ed] [Pamela's] and Morales's notices together, in combination with the circumstances surrounding this terrible accident" and found "NJTA was notified of its potential liability within ninety days of the accident." Id. at 351. The Court explained:

> Through Morales's notice of claim, the NJTA had actual written notice of a potential defect on the Turnpike – the lack of safety barriers near Interchange 14C – within ninety days of the accident; it was thus in a position to correct the defect. The NJTA similarly learned that at least one party to the multi-vehicle accident sought to hold it liable for a specific Turnpike defect and was put on notice that other individuals involved in the collision – including Timothy and [his child], who were named in the attached police report – could bring claims against it under the same theory of liability. In sum, armed with information from Morales's notice, the NJTA could investigate potential claims arising from the accident, prepare a defense, and formulate a plan to remedy promptly any Turnpike defect. Therefore, when [Pamela] finally served her amended notice of claim on the NJTA, it was already aware of its potential liability arising from the accident and was not prejudiced by the untimely filing.

> [Ibid.]

The Court concluded that O'Donnell was the "rare case" in which the plaintiff established extraordinary circumstances warranting the late filing of a notice of claim. Id. at 352. It did

27

so in light of the unique facts presented here, namely that: (1) [Pamela] quickly pursued her claims against the NJTA in good faith and identified the correct responsible party and its address in a properly completed notice of claim, but her attorney improperly served the State; (2) Morales served a timely notice of claim on the NJTA under N.J.S.A. 59:8-8, listing the exact circumstances surrounding the accident and the same theory of liability against the NJTA; and (3) [Pamela] pursued N.J.S.A. 59:8-9's procedure for permission to file a late notice of claim within one year of the accident.

[Id. at 351-52.]

We cannot agree with plaintiff's argument that the holding in O'Donnell requires a finding of extraordinary circumstances warranting the late filing of his notice of claim. The first factor on which the holding in O'Donnell is predicated is absent here. Plaintiff did not quickly pursue his claims, identify the correct responsible party, complete a notice of claim, and attempt to file that notice within the ninety-day statutory period. As discussed at length above, we found that between January 29, 2019 – the day the claims of decedent's estate and heir accrued – and April 29, 2019 – the last day of the ninety-day statutory period, plaintiff failed to complete and file a notice of claim, despite the absence of any obstacle to him doing so.

It is evident the O'Donnell Court's holding was primarily based on the timely, yet misdirected, filing of a notice of claim by Pamela's first attorney.

28

The extraordinary circumstances in <u>O'Donnell</u>, the Court explained, was that Pamela took all the steps necessary to file a timely notice of claim, was thwarted in her attempt to do so by an error on the part of her attorney, and another party injured in the accident filed a timely notice of claim, raising the same theory of liability, and attached a document that named O'Donnell's deceased husband and child.

We do not find in <u>O'Donnell</u> support for the proposition that a party who does not attempt to file a notice of claim within the statutory period may establish extraordinary circumstances based on the timely filing of a notice of claim by another party injured in the same incident. Extending <u>O'Donnell</u> to those circumstances would, in effect, create a rule that whenever one party injured in an accident for which a public entity may be liable files a timely notice of claim, any other party injured in that accident, regardless of their failure to attempt to file a timely notice of claim, could establish extraordinary circumstances permitting the filing of a late notice of claim pursuant to N.J.S.A. 59:8-9. We decline plaintiff's invitation to interpret the holding in <u>O'Donnell</u> to effectuate such a significant expansion of the "rare cases" in which the extraordinary circumstances standard has been met.

Having determined plaintiff failed to establish the first prong set forth in O'Donnell, we need not determine whether Dixon's notice of claim contained information equivalent to the detailed information in Morales's notice of claim. We note only that Dixon's notice of claim does not mention Griffin or state that any other person was shot during the incident. In addition, Dixon's notice of claim does not set forth a theory of liability.

The supplementation of the record with Dixon's notice of claim, considered in light of the holding in O'Donnell, does not change our conclusion the trial court erred when it found extraordinary circumstances warranted leave for plaintiff to file a late notice of claim.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1619-22